UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MARTY PAUL, an individual; and
BRIAN BUSKIRK, an individual,

                Plaintiffs,

     v.

RBC CAPITAL MARKETS, LLC, a
Minnesota limited liability company;
ROYAL BANK OF CANADA, a
Canadian corporation; and ROYAL
BANK OF CANADA US WEALTH
ACCUMULATION PLAN, an employee
benefit plan,

                Defendants.

No.

**COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF, AND
INJUNCTIVE RELIEF**

## I.     INTRODUCTION

1.     Plaintiffs Marty Paul and Brian Buskirk (collectively, "Plaintiffs") bring this

action against defendants RBC Capital Markets, LLC, Royal Bank of Canada, and the

Royal Bank of Canada US Wealth Accumulation Plan (collectively, "Defendants").

Defendants improperly withheld over $1.6 million in benefits due to Paul and almost

$300,000 due to Buskirk under the Royal Bank of Canada US Wealth Accumulation Plan.

Defendants contended that forfeitures of Plaintiffs' benefits under the plan is permissible on

the grounds that it is a "top-hat" plan that is exempt from many of the requirements and

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  protections of the Employee Retirement Income Security Act.  In law and fact, the Royal

2  Bank of Canada US Wealth Accumulation Plan is not a "top-hat" plan, and therefore

3  Defendants' forfeitures of Plaintiffs' benefits were illegal.  Plaintiffs are entitled to the

4  benefits Defendants illegally withheld, along with other damages, attorney's fees and costs.

5      2.      Plaintiffs assert claims relating to Defendants' denial of benefits due to them

6  pursuant to Sections 502(a)(1)(B), 502(a)(2), and 502(a)(3) of the Employment Retirement

7  Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3),

8  against RBC Capital Markets, LLC ("RBC Capital Markets"), Royal Bank of Canada, and

9  the Royal Bank of Canada US Wealth Accumulation Plan (the "WAP").  Plaintiffs are, and

10  have at all relevant times been, WAP participants within the meaning of ERISA § 3(7), 29

11  U.S.C. § 1002(7).

12      3.      Plaintiffs' claims arise from the failure of the WAP to pay benefits due to

13  them in accordance with the requirements of ERISA and from the failure of RBC Capital

14  Markets and Royal Bank of Canada, who are fiduciaries of the plan within the meaning of

15  ERISA, to act solely in the interest of the WAP's participants and beneficiaries and to

16  administer the WAP in compliance with ERISA.

17      4.      The claims herein are brought on behalf of Plaintiffs individually to recover

18  benefits due under the WAP and for declaratory judgment regarding Plaintiffs' right to

19  future benefits due under the WAP.  Additional claims are brought by Plaintiffs in a

20  representative capacity, on behalf of the WAP, in order to make the WAP, and indirectly

21  Plaintiffs, whole for losses resulting from breaches of fiduciary duty and/or co-fiduciary

22  duty by the Defendants, to prevent further breaches of fiduciary duty, and to compel future

23  compliance by Defendants with ERISA vis-à-vis the WAP.

## II.    PARTIES

25      5.      Plaintiff Marty Paul ("Paul") is a citizen of the United States and a resident

26  of Pierce County, Washington.  Paul is, and at all relevant times has been, a participant as

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 2

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the WAP.  Paul began working for Dain Bosworth (a predecessor to RBC Capital Markets) in 1994.  Paul worked for RBC Capital Markets as a financial consultant when his employment was terminated on March 7, 2011.

6.      Plaintiff Brian Buskirk ("Buskirk") is a citizen of the United States and a resident of Kitsap County, Washington.  Buskirk is, and at all relevant times has been, a participant as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the WAP.  Buskirk began working for Dain Bosworth (a predecessor to RBC Capital Markets) in 1985.  Buskirk worked for RBC Capital Markets as a financial consultant when he separated from RBC Capital Markets on August 10, 2012.

7.      Defendant RBC Capital Markets, LLC, ("RBC Capital Markets") is a limited liability company organized under the laws of Minnesota and doing business in Washington State.  Through various holding companies, RBC Capital Markets is a subsidiary of the Royal Bank of Canada.

8.      Defendant Royal Bank of Canada is a Schedule I bank under the Canadian Bank Act, headquartered in Toronto, Ontario, Canada.  The Royal Bank of Canada operates globally and employs workers in the United States.  Each of Royal Bank of Canada, RBC Capital Markets, and each participating intermediate entity is, and at all relevant times has been, an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5).  Through various holding companies, the Royal Bank of Canada is the ultimate parent of RBC Capital Markets.

9.      Defendant Royal Bank of Canada US Wealth Accumulation Plan (the "WAP") is an "employee benefit pension plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  *See Tolbert v. RBC Capital Markets Corp., et al.*, 758 F.3d 619 (5th Cir. 2014).  An employee benefit plan is an entity capable of suing and being sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

10.     Defendants Royal Bank of Canada and RBC Capital Markets are fiduciaries of the WAP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).  Hereinafter, Royal Bank of Canada and RBC Capital Markets are collectively referred to as the "Fiduciary Defendants."

### III.     JURISDICTION AND VENUE

11.     The Court has original jurisdiction over Plaintiffs' ERISA claims pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     This Court has personal jurisdiction over all Defendants because Defendants have transacted business in Washington State and because Defendants have committed wrongful conduct, the effect of which has been felt in Washington State.

13.     Venue lies in this District under 28 U.S.C. § 1391(b) and (c) because Plaintiffs reside in this District, because some of the events giving rise to this claim occurred in this District, and because one or more Defendants may be found in this District. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the WAP is administered in this District, one or more of the fiduciary breaches for which relief is sought occurred in this District, and one or more Defendants may be found in this District.

### IV.     FACTS

### The WAP

14.     The WAP is a "plan" and an "employee benefit plan" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3) and an "employee pension benefit plan" as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), in that it is a plan, fund or program that was established or maintained by an employer to provide retirement income to employees, or to provide for a deferral of income by employees for periods extending to the termination of covered employment or beyond.

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 4

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

15.     Under ERISA, all employee benefit plans must be established and maintained pursuant to a written instrument.  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). RBC established and maintained the WAP for the purpose of providing retirement benefits to its employees.

16.     The Royal Bank of Canada is the "plan sponsor" of the WAP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

17.     At times during Plaintiffs' participation in the WAP, including at the times of Plaintiffs' contributions to the WAP and Plaintiffs' separations from RBC Capital Markets, individuals who are not members of a select group of management or highly compensated employees have been eligible to participate in the WAP.

18.     At all relevant times, contributions to the WAP have consisted of three separate components: (1) the Participant's Voluntary Deferral Contributions; (2) the Participant's Mandatory Deferral Contributions; and (3) Company Contributions.

19.     Under Section 4.1 of the WAP, a Participant is fully vested at all times in his Voluntary Deferral Contributions.

20.     Under Section 4.2 of the WAP, Mandatory Deferral Contributions and Company Contributions vest at a time to be determined by the Plan Committee, subject to several provisos.  Because the WAP is not a "top-hat" plan, to the extent the WAP's vesting schedule conflicts with ERISA's mandatory minimum vesting schedule, it is invalid and unenforceable.

21.     Notwithstanding Section 4.2 of the WAP, Section 4.3 of the WAP purports to make any Mandatory Deferral Contributions and Company Contributions in a Participant's Account Balance forfeitable to Royal Bank of Canada, regardless of whether the vesting schedule for such contributions has been met, if a Participant's employment is terminated for cause.  Because the WAP is not a "top-hat" plan, WAP Section 4.3's forfeiture provisions are invalid and unenforceable.

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 5

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**Fiduciary Status, Duties, and Liability of the Fiduciary Defendants**

*A.      Fiduciary Status*

22.      Every ERISA plan must have at least one "named fiduciary" with authority to control and manage the operation and administration of the plan.  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  A person named in the plan document as the "administrator" is the named fiduciary.  Absent such designation, the plan's sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  No person is named in the WAP, and therefore the plan sponsor (Defendant Royal Bank of Canada) is the named fiduciary.

23.      In addition to explicitly identified fiduciaries, ERISA makes any person a fiduciary who is vested with or actually exercises discretionary authority or discretionary control respecting management of the plan or the disposition of its assets, or has discretionary authority or responsibility in the administration of the plan.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

24.      Each of the Fiduciary Defendants is vested with discretionary authority respecting management and administration of the WAP and/or disposition of the WAP's assets or has actually exercised discretionary authority respecting management and administration of the WAP and/or the disposition of the Plan's assets within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Accordingly, each of the Fiduciary Defendants is a "fiduciary" with respect to the WAP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

*B.      Fiduciary Duties*

25.      Plan fiduciaries are required to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the skill, care, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

YARMUTH  WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

character and with like aims.  ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

26.     ERISA requires plan fiduciaries to discharge their duties with respect to the plan in accordance with the documents and instruments governing the plan insofar as such document and instruments are consistent with Title I and Title IV of ERISA.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  In other words, if a plan's terms are inconsistent with ERISA, a plan fiduciary has a duty to override the plan document, to the extent necessary to comply with ERISA, in order to faithfully discharge his, her, or its duties.

27.     Under ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), plan fiduciaries must take appropriate steps to ensure that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

28.     Pursuant to ERISA § 203(a)(1), 29 U.S.C. § 1053(a)(1), every plan participant's own contributions are non-forfeitable.  Pursuant to those same provisions of ERISA, plan fiduciaries must take appropriate steps to assure that every plan participant's own contributions are non-forfeitable.

29.     Pursuant to ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B), every participant in an individual account plan must becomes fully vested in employer contributions made on his or her behalf (and those contributions become non-forfeitable) either after completing no more than three years of service if a "cliff" vesting schedule is used, or after completing no more than six years of service if a graduated vesting schedule is used.  Pursuant to those same provisions of ERISA, plan fiduciaries must take appropriate steps to assure that every plan participant becomes fully vested in employer contributions made on his or her behalf (and those contributions become non-forfeitable) either after completing three years of service if a "cliff" vesting schedule is used, or after

YARMUTH  WILSDON pllc

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

completing six years of service if a graduated vesting schedule is used. Subject to certain inapplicable exceptions, all of an employee's years of service with the employer maintaining the plan must be counted for purposes of computing the employee's non-forfeitable benefit under the plan. ERISA § 203(b)(1), 29 U.S.C. § 1053(b)(1).

30. ERISA fiduciaries have a duty to establish and carry out a funding policy and method consistent with the objectives of the plan and the requirements of Title I of ERISA, as required pursuant to ERISA § 402(b)(1), 29 U.S.C. § 1102(b)(1).

31. ERISA fiduciaries have a duty to ensure that plan assets are held in trust by one or more trustees pursuant to a written trust instrument as required under ERISA § 403(a), 29 U.S.C. § 1103(a).

**C. Fiduciary and Co-Fiduciary Liability**

32. ERISA § 409(a), 29 U.S.C. § 1109(a), provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to such plan any losses to the plan resulting from the breach, and to restore to such plan any profits of such fiduciary that have been made through use of the assets by the plan fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

33. ERISA § 405(a), 29 U.S.C. § 1105(a), provides, in relevant part, that a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he or she participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his or her failure to comply with section 404(a)(1) in the administration of his or her specific responsibilities which give rise to his or her status as a fiduciary, he or she has enabled such other fiduciary

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 8

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

to commit a breach; or (3) if he or she has knowledge of a breach by such other fiduciary, unless he or she makes reasonable efforts under the circumstances to remedy the breach.

### Paul's Participation in the WAP

34.     Paul joined RBC Capital Markets' predecessor firm, Dain Bosworth, in 1994.  In or before 2000, Paul became a participant in the WAP, which at that time was called the Dain Rauscher Wealth Accumulation Plan.  At times during Paul's participation in the WAP, and including the time of his termination from RBC Capital Markets, the WAP covered employees who were not members of a select group of management or highly compensated employees.

35.     Paul was terminated from employment with RBC Capital Markets on March 7, 2011.  RBC Capital Markets characterized Paul's termination as "for cause."  The WAP purports to make any Mandatory Deferral Contributions and Company Contributions in a Participant's Account Balance forfeitable to Royal Bank of Canada, regardless of whether the vesting schedule for such contributions has been met, if a Participant's employment is terminated for cause.  WAP § 4.3.  However, because (1) the WAP is not a "top-hat" plan, and (2) Paul had been employed by RBC Capital Markets for greater than the time required under ERISA for those contributions to be non-forfeitable, Paul's Mandatory Deferral Contributions and Company Contributions were non-forfeitable irrespective of any reason for Paul's termination.  *See* ERISA § 203(a)(1), 29 U.S.C. § 1053(a)(1); ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B).

36.     On or about March 15, 2012, RBC Capital Markets sent Paul a letter that stated that as of February 28, 2012, Paul's total balance in the WAP was $2,592,046.  RBC Capital Markets' letter further stated that the WAP Committee determined that Paul's separation from RBC Capital Markets was for "cause" and therefore determined that his "Company Contributions (and mandatory deferrals), both vested and unvested, have been forfeited in the amount of $1,612,152."

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

37.     The WAP sets forth a claims procedure for any participant or his or her

estate to object to any determination relating to any payment under the WAP.  *See* WAP

§ 7.2.  Under the WAP, a participant who disagrees with a determination relating to

payment under the WAP must submit a written claim within 90 days after the participant

knows of his or her claim for benefits.  *See* WAP § 7.3.

38.     Paul timely submitted a claim to the WAP Committee by letter dated

April 20, 2012.

39.     RBC Capital Markets responded to Paul's claim by letter dated July 19,

2012.  RBC Capital Markets' letter stated that the WAP Committee directed "RBC's

compensation team" to consider Paul's claim.  According to RBC Capital Markets' letter,

the "compensation team" determined that Paul's termination was for cause, and therefore

all Company Contributions were forfeited pursuant to WAP § 4.3.  RBC Capital Markets'

letter did not address Paul's claim for his Mandatory Deferral Contributions.  With respect

to Paul's contention that the WAP is not a "top-hat" plan and therefore all of his WAP

benefits are non-forfeitable, RBC Capital Markets' letter stated that the "compensation

team" was not authorized to consider that argument, specifically stating that "[a]ny further

determination as to whether the Plan is an 'employee pension benefit plan' subject to the

provisions of ERISA is outside the scope of the Committee's authority.  Accordingly, the

compensation team made no determinations with regard to these issues."

40.     The WAP provides that a claimant may request that a denied claim be

reviewed.  WAP § 7.4.  Under the WAP a claimant must submit a written request for

review of a denied claim within 60 days after the claimant's receipt of an Adverse Benefit

Determination.

41.     Paul timely requested review of the WAP Committee's denial of his claim

by letter dated August 16, 2012.  In that letter Paul also requested copies of all documents

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 10

1    relevant to his claim for benefits, as Defendants are required to provide under WAP § 7.4

2    and 29 C.F.R. 2560.503-1(j)(3).

3         42.    Under the WAP, the WAP Committee is to respond to a claimant's request

4    for review within 60 days after receiving the request for review or, with notice to the

5    claimant describing special circumstances requiring a specified amount of additional times,

6    up to 120 days from the date the request for review was received.

7         43.    On October 4, 2012, the WAP Committee sent a letter to Paul's attorney

8    stating that it needed additional time to consider Paul's appeal.

9         44.    On December 14, 2012, the WAP Committee sent a letter to Paul's attorney

10   affirming denial of his claim.  With respect to Paul's argument that the WAP is not a "top-

11   hat" plan, the WAP Committee performed no real inquiry, analysis, or review, instead

12   simply stating that the Royal Bank of Canada's intent was to "deem" the WAP a "top-hat"

13   plan, without consideration of whether it indeed met the requirements to be qualified as a

14   "top-hat" plan.  Although Paul requested, under WAP § 7.4 and 29 C.F.R. 2560.503-1(j)(3),

15   documents relating to whether the WAP is a "top-hat" plan, the Committee provided no

16   documents relating to the "top-hat" issue other than the mere conclusion that the Royal

17   Bank of Canada believes that if the WAP is subject to ERISA it qualifies for the "top-hat"

18   exemptions.

19        45.    Paul has exhausted his administrative remedies under the WAP and, as set

20   forth in the WAP and the Defendants' July 19 and December 14 letters, is entitled to bring a

21   civil action under ERISA § 502(a), 29 U.S.C. § 1132(a).[1]

22

23   _____

24   [1] On February 19, 2013, Paul filed a complaint alleging substantially the same claims against Defendants as alleged in this complaint.  *See Paul v. RBC Capital Markets LLC, et al.*, No. 3:13-cv-05119-RBL (W.D. Wash.).  In early May 2013, Paul and Defendants agree to enter a tolling agreement for Paul's claims against Defendants pending certain developments in a purported class action lawsuit in the Southern District of Texas

25   captioned *Tolbert v. RBC Capital Markets LLC, et al.*, No. 4:11-cv-00107 (S.D. Tex.).  Per that agreement, Paul voluntarily dismissed his claims against Defendants without prejudice.  That tolling agreement

26   subsequently was amended and extended.  This complaint is timely under that tolling agreement.

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 11



YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

46.     Paul has been damaged by the Fiduciary Defendants' and the WAP's actions in forfeiting his benefits.

### Buskirk's Participation in the WAP

47.     Buskirk joined RBC Capital Markets' predecessor firm, Dain Bosworth, in 1985.  Sometime thereafter Buskirk became a participant in the WAP, which at that time was called the Dain Rauscher Wealth Accumulation Plan.  At times during Buskirk's participation in the WAP, and including the time of his separation from RBC Capital Markets, the WAP covered employees who were not members of a select group of management or highly compensated employees.

48.     Buskirk separated from RBC Capital Markets on August 10, 2012.  The WAP purports to make any Company Contributions in a Participant's Account Balance vest on a schedule set by the WAP Committee.  WAP § 4.2.  However, because (1) the WAP is not a "top-hat" plan, and (2) Buskirk had been employed by RBC Capital Markets for greater than the time required under ERISA for those contributions to be non-forfeitable, Buskirk's Company Contributions were non-forfeitable irrespective of the vesting schedule set by the WAP Committee.  *See* ERISA § 203(a)(1), 29 U.S.C. § 1053(a)(1); ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B).

49.     Following his separation from service, Buskirk received a Fidelity NetBenefits transaction history report that indicated that $297,676 was forfeited from his WAP account as of November 30, 3012.

50.     The WAP sets forth a claims procedure for any participant or his or her estate to object to any determination relating to any payment under the WAP.  *See* WAP § 7.2.  Under the WAP, a participant who disagrees with a determination relating to payment under the WAP must submit a written claim within 90 days after the participant knows of his or her claim for benefits.  *See* WAP § 7.3.

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 12

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

51.     Buskirk timely submitted a claim to the WAP Committee by letter dated January 22, 2013.

52.     RBC Capital Markets responded to Buskirk's claim by letter dated April 19, 2013.  RBC Capital Markets' letter stated that the WAP Committee directed "RBC's compensation team" to consider Buskirk's claim.  According to RBC Capital Markets' letter, the "compensation team" determined that Buskirk's separation was voluntary, and therefore all "unvested Company Contributions were properly forfeited pursuant to Section 4.6 of the Plan."  With respect to Buskirk's contention that the WAP is not a "top-hat" plan and therefore all of his WAP benefits are non-forfeitable, RBC Capital Markets' letter stated that the "compensation team" noted that the WAP was not intended to be a plan subject to ERISA and that the court presiding over *Tolbert v. RBC Capital Markets Corp.*, No. 4:11-cv-00107 (S.D. Tex.), had determined that the WAP was not an employee pension benefit plan subject to ERISA.  That district court's determination was later reversed by the United States Court of Appeals for the Fifth Circuit.  *See Tolbert v. RBC Capital Markets Corp., et al.*, 758 F.3d 619 (5th Cir. 2014).  The "compensation team" also stated that the WAP provided that if it is determined to be an employee pension benefit plan, it is intended to be a "top-hat" plan exempt from many ERISA requirements.  The compensation team also "relied on the analysis and arguments made in the Tolbert litigation related to the issues raised," and "concluded that the identified grounds for a challenge are insufficient and that the WAP would meet the requirements for a 'top-hat' plan."  RBC Capital Markets' letter also stated that "[a]ny further determinations as to what Mr. Buskirk's rights would be if the Plan is an 'employee pension benefit plan' subject to the provisions of ERISA is outside of the scope of the compensation team's authority" and "[a]ccordingly, the compensation team made no determinations with regard to those issues."

53.     The WAP provides that a claimant may request that a denied claim be reviewed.  WAP § 7.4.  Under the WAP a claimant must submit a written request for

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 13

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  review of a denied claim within 60 days after the claimant's receipt of an Adverse Benefit

2  Determination.

3      54.    Buskirk timely requested review of the WAP Committee's denial of his

4  claim by letter dated May 13, 2013.  In that letter Buskirk also requested copies of all

5  documents relevant to his claim for benefits, as Defendants are required to provide under

6  WAP § 7.4 and 29 C.F.R. 2560.503-1(j)(3).

7      55.    Under the WAP, the WAP Committee is to respond to a claimant's request

8  for review within 60 days after receiving the request for review or, with notice to the

9  claimant describing special circumstances requiring a specified amount of additional times,

10  up to 120 days from the date the request for review was received.

11      56.    On July 3, 2013, the WAP Committee sent a letter to Buskirk's attorney

12  stating that it needed additional time to consider Buskirk's appeal.

13      57.    On September 11, 2013, the WAP Committee sent a letter to Buskirk's

14  attorney affirming denial of his claim.  The WAP Committee's analysis was essentially the

15  same as that set forth in the April 19, 2013 Adverse Benefit Determination.  Although

16  Buskirk requested, under WAP § 7.4 and 29 C.F.R. 2560.503-1(j)(3), documents relating to

17  whether the WAP is a "top-hat" plan, the Committee provided no documents relating to the

18  "top-hat" issue.

19      58.    Buskirk has exhausted his administrative remedies under the WAP and, as

20  set forth in the WAP and the Defendants' April 19 and September 11 letters, is entitled to

21  bring a civil action under ERISA § 502(a), 29 U.S.C. § 1132(a).[2]

22      59.    Buskirk has been damaged by the Fiduciary Defendants' and the WAP's

23  actions in forfeiting his benefits.

24
25
26

[2] Following Buskirk's exhaustion of administrative remedies under the WAP, Buskirk and Defendants agreed to enter a tolling agreement for Buskirk's claims against Defendants pending certain developments in a purported class action lawsuit in the Southern District of Texas captioned *Tolbert v. RBC Capital Markets LLC, et al.*, No. 4:11-cv-00107 (S.D. Tex.).  That tolling agreement subsequently was amended and extended. This complaint is timely under that tolling agreement.

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 14



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  **V.     FIRST CLAIM: ENFORCEMENT OF RIGHTS AND RECOVERY OF**

2  **BENEFITS DUE PURSUANT TO ERISA § 502(a)(1)(B)**

3  **(Against All Defendants)**

4      60.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through

5  59 as if fully set forth herein.

6      61.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a

7  participant may bring a civil action to recover benefits due to him or her under the WAP, to

8  enforce his or her rights under the WAP, or to clarify his or her rights to future benefits

9  under the WAP.

10     62.     Plaintiffs bring this claim to compel the WAP and the Fiduciary Defendants

11  to revoke the illegal forfeiture of their benefits and distribute the full amount of Paul's

12  Mandatory Deferral Contributions and Company Contributions and Buskirk's Company

13  Contributions under the WAP.

14  **VI.    SECOND CLAIM: DECLARATORY JUDGMENT TO CLARIFY**

15  **PLAINTIFFS' RIGHTS TO BENEFITS DUE UNDER THE WAP PURSUANT TO**

16  **ERISA § 502(a)(1)(B)**

17  **(Against All Defendants)**

18     63.     Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through

19  62 as if fully set forth herein.

20     64.     Under ERISA, a "top-hat" plan is an unfunded plan that is maintained by an

21  employer primarily for the purpose of providing deferred compensation for a select group

22  of management or highly compensated employees.  ERISA § 401(a)(1), 29 U.S.C.

23  § 1101(a)(1).

24     65.     To qualify for "top-hat" status, a plan must meet two requirements.  First,

25  the plan must cover relatively few, highly compensated or management employees.

26  Second, the members of the "top-hat" group must be able to substantially influence the

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 15

YARMUTH  WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

design or operation of the plan.  DOL Advisory Opinion 90-14A; *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996).

66.     A plan that fails to qualify as a "top-hat" plan must satisfy one of the mandatory minimum vesting schedules set forth in ERISA § 203(a)(1) and (2), 29 U.S.C. § 1053(a)(1) and (2).

67.     A plan that fails to qualify as a "top-hat" plan is required, under ERISA § 402(b)(1), 29 U.S.C. § 1102(b)(1), to establish and maintain a funding policy and method consistent with the objectives of the plan and the requirements of Title I of ERISA.

68.     Under ERISA § 403(a), 29 U.S.C. § 1103(a), a plan that fails to qualify as a "top-hat" plan is required to hold the plan's assets in trust.

69.     Section 2.1 of the WAP provides that participation is available to employees whose "compensation or production otherwise exceeds a level deemed appropriate by the Committee . . . ."  The WAP's administration by Defendants has resulted in WAP participation eligibility in excess of what constitutes a "select group" within the meaning of ERISA § 401(a)(1), 29 U.S.C. § 1101(a)(1); further, individuals who are not members of a select group of highly compensated or management employees have been permitted to participate in the WAP.

70.     Numerous WAP participants were in the past not and/or are not now able to exert substantial influence over the design or operation of the plan; the WAP covers thousands of employees, the vast majority of whom were in the past not and/or are not now corporate directors, officers, senior management employees or management employees.  As a result, these participants have lacked and/or now lack the ability to influence either the design or operation of the WAP.

71.     Because the WAP fails to qualify for "top-hat" status, Plaintiffs' benefits under the WAP are subject to ERISA's mandatory minimum vesting requirements.

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

72. Because the WAP fails to qualify as a "top-hat" plan, the WAP must be funded according to a policy and method that satisfies the requirements of ERISA.

73. Because the WAP fails to qualify as a "top-hat" plan, the WAP assets, including those to be used for payment of benefits owed to Plaintiffs, are subject to ERISA's trust requirement.

74. Plaintiffs bring this claim seeking a declaration that their benefits under the WAP are fully vested and non-forfeitable, based solely on their years of service, pursuant to ERISA's mandatory minimum vesting schedule and requirements for crediting all of Plaintiffs' years of service with RBC Capital Markets and its predecessors. Plaintiffs further seek a declaration clarifying that the WAP must be funded according to a method that satisfies ERISA and that the assets be held in trust pursuant to a written trust instrument as required under ERISA.

## VII.   THIRD CLAIM: BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA § 502(a)(2)

### (Against RBC Capital Markets and Royal Bank of Canada)

75. Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 74 as if fully set forth herein.

76. Plaintiffs seek relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.

### A.   *Failure to Operate the WAP for the Exclusive Benefit of WAP Participants and Beneficiaries*

77. ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), provides that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

78.     The Fiduciary Defendants breached their ERISA fiduciary duties by allowing WAP assets to inure to the benefit of RBC, in contravention of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

**B.      *Violation of ERISA Vesting and Non-Forfeiture Requirements***

79.     ERISA § 203(a)(1), 29 U.S.C. § 1053(a)(1), provides that every plan participant's own contributions are fully vested and non-forfeitable.

80.     ERISA § 203(a)(2)(B), 29 U.S.C. § 1053(a)(2)(B), provides that every plan participant must fully vest in employer contributions made on his or her behalf (and those contributions become non-forfeitable) either after completing three years of service if a "cliff" vesting schedule is used, or after completing six years of service if a graduated vesting schedule is used.

81.     The Fiduciary Defendants breached their fiduciary duties by violating ERISA's prohibition against using employees' vested, non-forfeitable benefits to meet their own obligations instead of paying benefits owed to Plaintiffs.  ERISA § 203(a), 29 U.S.C. § 1053(a); ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

82.     The Fiduciary Defendants breached their fiduciary duties by failing to fully vest Plaintiffs in their plan benefits according to the mandatory minimum vesting schedules described in ERISA § 203(a)(1) and (2), 29 U.S.C. § 1053(a)(1) and (2).

83.     The Fiduciary Defendants breached their fiduciary duties by purporting to forfeit Paul's Mandatory Deferral Contributions and Company Contributions and Buskirk's Company Contributions in violation of the mandatory minimum vesting schedules described in ERISA § 203(a)(1) and (2), 29 U.S.C. § 1053(a)(1) and (2).

//

//

//

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

*C.*     ***Violation of ERISA Funding Requirements***

2   84. The Fiduciary Defendants breached their ERISA fiduciary duties by failing

3 to provide a procedure for establishing and carrying out a funding policy and method

4 consistent with the objectives of the plan and the requirements of Title I of ERISA, as

5 required pursuant to ERISA § 402(b)(1), 29 U.S.C. § 1102(b)(1).

6

*D.*     ***Violation of ERISA Trust Requirement***

7   85. The Fiduciary Defendants breached their ERISA fiduciary duties by failing

8 to ensure that all of the WAP assets were held in trust by one or more trustees pursuant to a

9 written trust instrument as required under ERISA § 403(a), 29 U.S.C. § 1103(a).

10   86. Plaintiffs bring this action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2),

11 for relief under ERISA § 409(a), 29 U.S.C. § 1109, to recover losses arising from the

12 Fiduciary Defendants' breaches of fiduciary duties.

13  **VIII.   FOURTH CLAIM: TO ENJOIN DENIAL OF FULL VESTING PURSUANT**

14        **TO ERISA § 502(a)(3)**

15        **(Against All Defendants)**

16   87. Plaintiffs reallege each and every allegation set forth in paragraphs 1 through

17 86 as if fully set forth herein.

18   88. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a plan participant may

19 bring a civil action (A) to enjoin any act or practice which violates any provision of Title I

20 of ERISA; or (B) to obtain other appropriate equitable relief (i) to redress such violations or

21 (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

22   89. Plaintiffs bring this claim to enjoin Defendants from failing to fully vest Paul

23 in his Mandatory Deferral Contributions and Company Contributions and from failing to

24 fully vest Buskirk in his Company Contributions.  Plaintiffs also seek relief in the form of

25 an injunction to prevent Defendants' further refusal to pay Plaintiffs all WAP benefits due

26 under ERISA.

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**PRAYER FOR RELIEF**

Plaintiffs request that the Court enter judgment as follows:

A.    Declaring (1) that the WAP is an "employee benefit pension plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and (2) that the WAP is not a "top-hat" plan, within the meaning of ERISA § 201(2), 29 U.S.C. § 1051(2); ERISA § 301(a)(3), 29 U.S.C. § 1081(a)(3); and ERISA § 401(a)(1), 29 U.S.C. § 1101(a)(1), and is therefore subject to all ERISA requirements, including, without limitation, those provisions relating to vesting, funding, fiduciary obligations, notice, and reporting;

B.    Declaring that the Fiduciary Defendants, and each Fiduciary Defendant, have breached their ERISA-mandated fiduciary duties to the WAP's participants and beneficiaries;

C.    Directing the WAP and the Fiduciary Defendants to pay over to Paul all Mandatory Deferral Contributions and Company Contributions;

D.    Directing the WAP and the Fiduciary Defendants to pay over to Buskirk all Company Contributions;

E.    Awarding Paul all damages resulting from Defendants' purported forfeiture of Paul's Mandatory Deferral Contributions and Company Contributions;

F.    Awarding Buskirk all damages resulting from Defendants' purported forfeiture of Buskirk's Company Contributions;

G.    Awarding Plaintiffs pre-judgment and post-judgment interest to the full extent permitted by law;

H.    Imposing a constructive trust on the assets of any Defendant in the amount by which that Defendant was enriched at the expense of the WAP or any participant or beneficiary;

YARMUTH  WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1       I.      Awarding Plaintiffs all penalties under ERISA § 502(c)(1), 29 U.S.C.

2   § 1132(c)(1), for Defendants' failure to provide to Plaintiffs all documents relevant to

3   Plaintiffs' claims for benefits;

4       J.      Awarding Plaintiffs their reasonable attorney's fees and costs pursuant to

5   ERISA § 502(g), 29 U.S.C. § 1132(g), and federal law;

6       K.      Enjoining Defendants, and each Defendant, from any further violations of

7   their fiduciary duties or any other substantive provision of ERISA; and

8       L.      Awarding such other and further relief as this Court may deem appropriate.

9

10       DATED:  July 11, 2016.

11                   **YARMUTH WILSDON PLLC**

12

13                   By: */s/ Jeremy E. Roller*
                   Jeremy E. Roller, WSBA # 32021

14

15                   1420 Fifth Avenue, Suite 1400
                Seattle, Washington 98101
                Telephone: 206.516.3800

16                   Facsimile: 206.516.3888
                Email: jroller@yarmuth.com

17                   *Attorneys for Plaintiffs Marty Paul*
                *and Brian Buskirk*

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES, DECLARATORY
RELIEF, AND INJUNCTIVE RELIEF – Page 21

**||| YARMUTH WILSDON** PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888