UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARTY PAUL, an individual; and
BRIAN BUSKIRK, an individual,

               Plaintiffs,

     v.

RBC CAPITAL MARKETS, LLC, a
Minnesota limited liability company;
ROYAL BANK OF CANADA, a
Canadian corporation; and ROYAL
BANK OF CANADA US WEALTH
ACCUMULATION PLAN, an employee
benefit plan,

               Defendants.

No. 3:16-cv-05616-RBL

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PENSION PLAN ISSUE**

NOTED ON MOTION CALENDAR:
October 20, 2017

**ORAL ARGUMENT REQUESTED**

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON
PENSION PLAN ISSUE
NO. 3:16-cv-05616-RBL

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

# I. INTRODUCTION

RBC asks this Court to ignore the judgment of the Fifth Circuit Court of Appeals on the grounds that three distinguished judges of that court were somehow hoodwinked by clever plaintiffs' lawyers into improperly determining that the WAP—the very plan at issue in this litigation—was an "employee pension benefit plan" under ERISA. *See* Defendants' Motion for Summary Judgment on Pension Plan Issue ("Defendants' Brief" or "Def. Br.") (Dkt. No. 24) at 23 ("Ultimately the Fifth Circuit apparently spotted the buzzwords 'Retirement' and 'Separation' in the WAP, without considering their actual operation or resulting impact on the legal question."). The Fifth Circuit deserves more credit than that. In a thorough and well-reasoned opinion, that court found that the WAP "fits comfortably" within ERISA's definition of "employee pension benefit plan." *See Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 626 (5th Cir. 2014).

RBC's disappointment with the Fifth Circuit's adverse ruling is understandable. But in an attempt to avoid the preclusive effect of that judgment, RBC contends first that the issue resolved in *Tolbert* was not identical to that this Court must decide because different "versions" of the WAP apply in the two cases, second that RBC made changes to how it administered the WAP, and third that the issue was not "actually litigated" in *Tolbert* because in that case RBC only half-heartedly made the argument upon which it principally relies here, namely that the WAP is a "bonus program."

RBC's first argument is simply wrong because RBC's own witness—indeed the manager of the WAP—has testified that there is a single WAP, not multiple versions as RBC's brief suggests. As described in Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 26) ("Plaintiff's Brief" or "Pl. Br.") and in this brief, the *Tolbert* Court held that the WAP—not one snapshot of the WAP in time—is an "employee pension benefit plan."

RBC's second argument is a red herring, as the *Tolbert* Court found the WAP to be an "employee pension benefit plan" on its face, without the need to inquire as to the

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

particulars of its administration, and thus RBC's purported changes to administration of the WAP simply do not affect the collateral estoppel inquiry.

As to the third argument against collateral estoppel, RBC carefully avoids saying that it did not make the argument upon which it principally relies here, only that it "did not argue directly" that the WAP was a "bonus program." Def. Br. at 12. That RBC only argued "indirectly" in *Tolbert* that the WAP was a bonus program does not change the Fifth Circuit's finding that the WAP is *not* such a program. Moreover, black letter Ninth Circuit law provides that "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (emphases in original). The issue here—whether the WAP is an "employee pension benefit plan"—plainly was "raised and determined" in *Tolbert*.

In short, RBC is collaterally estopped from re-litigating whether the WAP is a "pension plan" because that issue was actually litigated and resolved by the Fifth Circuit.

Even if this Court finds that collateral estoppel somehow does not apply, *Tolbert*'s reasoning mandates entry of partial summary judgment in Plaintiffs' favor on this issue because every term upon which the *Tolbert* Court relied in finding the WAP to be an "employee pension benefit plan" is present in every other plan document that could apply in this case. *See* Weinstein Decl. Ex. 26 (Dkt. No. 27 at 474-85).

RBC also improperly reads into the "employee pension benefit plan" inquiry a requirement that does not apply, namely that contributions be "systematically deferred" to retirement or beyond. *See* Section II(B)(1)(b), *infra*. "Systematic deferral" only comes into play to determine if a bonus program that otherwise would not meet the definition of "employee pension benefit plan" systematically defers bonuses to separation or beyond.

Finally, RBC ignores that significant portions of assets in the WAP could never be considered bonuses, rendering the entire bonus program argument irrelevant. To compound

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

that error, RBC has failed to produce information in its control that would demonstrate the extent to which non-bonus compensation is part of the WAP. Relatedly, although RBC has included evidence that between half and two-thirds of WAP participants elected to have at least *some* WAP distributions made in-service, RBC does not disclose which of those participants also elected post-separation distributions and has failed to produce evidence relating to the amount or percentage of WAP assets elected for distribution in-service or post-separation.

The Fifth Circuit has already decided the exact issue now before this Court. RBC is collaterally estopped from re-litigating that adverse result. But even setting aside collateral estoppel, the undisputed facts show that the WAP is an "employee pension benefit plan." This Court should grant Plaintiffs' Motion for Partial Summary Judgment and deny RBC's Motion for Summary Judgment.

## II. ARGUMENT

### A. Collateral Estoppel Bars Re-Litigation Of This Issue Here Because The Issue Is "Identical" To That "Actually Litigated" In *Tolbert*.

Under the collateral estoppel doctrine, if the issue in this case is "identical" to the issue "actually litigated" in *Tolbert v. RBC Capital Markets Corp.* 758 F.3d 619 (5th Cir. 2014), then *Tolbert* estops RBC from re-litigating the same issue here. *See Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 114 (9th Cir. 1999); *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007).

### 1. There Is A Single WAP, Not Multiple Versions Of The WAP.

In finding that "the WAP is a pension plan," the Fifth Circuit analyzed the 2008 Plan Document because the *Tolbert* plaintiffs brought their claims under that plan document. *Tolbert v. RBC Capital Mkts. Corp.*, No. H-11-0107, 2013 U.S. Dist. LEXIS 100476, at *3-4 n.4. However, the specific plan document analyzed by the Fifth Circuit has no bearing on whether *Tolbert* estops RBC from re-litigating this issue because *all* of the plan documents for 2005 to 2012 govern a single plan—the WAP.



1    RBC's attempt to frame the *Tolbert* decision as limited to a specific "version" or

2    "iteration" of the WAP, as opposed to the WAP itself (Def. Br. at 11), is belied by the

3    evidentiary record.  RBC's U.S. Deferred Compensation Manager's testimony on this topic

4    is clear: periodically amended plan documents did not create new plans.  Sikich Dep., 77:6-

5    21 (Dkt. No. 27 at 21).  Although RBC published various "versions" of WAP plan

6    documents between 2005 and 2012, these plan documents governed a single plan—the

7    WAP.  Sikich Dep. 132:1-5 (Dkt. No. at 26) (applying the term "versions" to various

8    amendments to WAP plan documents "does not mean that there are different WAP plans").

9        In 2012, when RBC actually wanted to create a new and separate WAP, it knew

10   how to do that.  First RBC "froze" the existing WAP pursuant to a plan document that

11   explicitly stated that "[e]ffective January 1, 2012 (the 'Effective Date'), the Plan is frozen

12   and the Plan will not accept any new Participants or Company Contributions or Deferred

13   Contributions…with respect to any compensation relating to periods beginning on or after

14   the Effective Date."  Weinstein Decl., Ex. 12 ("Frozen 2012 Plan Document") at ¶ 1.1 (Dkt.

15   No. 27 at 245).  Then RBC created a truly new "version" of the WAP by publishing the a

16   plan document that, unlike the various other WAP plan documents from 2005 to 2012,

17   provided that it would "supersede[] all prior versions of the Plan…"  *Compare* Weinstein

18   Decl., Exs. 2, 6-10 at ¶ 1.1 (Dkt. No. 27 at 35, 116, 136, 155, 175, 198) *with* Weinstein

19   Decl., Ex. 11 ("New WAP Plan Document") at ¶ 1.1 (Dkt. No. 27 at 221).  The New WAP

20   Plan Document stated: "This Plan is a new plan that is *wholly separate from the US Wealth*

21   *Accumulation Plan*....The purpose of this Plan is to *replace the Frozen Plan* with

22   nonqualified deferred compensation benefits for a select group of management or highly

23   compensated employees of the Employers.  Benefits under this Plan *are separate from and*

24   *unrelated to any benefits provided under the Frozen Plan*…"  Weinstein Decl., Ex. 11 at ¶

25   1.1 (Dkt. No. 27 at 221).  Only through this deliberate process did RBC create a new

26

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

"version" of the WAP. Put simply, the WAP at issue here is the same WAP the *Tolbert* Court found to be an employee pension benefit plan.

**2. The Same WAP Provisions Relied Upon By The *Tolbert* Court Are Present In All WAP Plan Documents At Issue Here.**

The same provisions of the WAP plan document upon which the Fifth Circuit relied in *Tolbert* are present in all WAP plan documents that conceivably could apply to Plaintiffs' claims. *See* Pl. Br. at 11-13 and Weinstein Decl., Ex. 26 (Dkt. No. 27 at 474-85) (showing that provisions in the applicable plan documents are identical or substantively identical across the various plan documents, including the 2008 Plan Document analyzed in *Tolbert*). Accordingly, the cases cited by RBC (Def. Br. at 11 n.12, 14), in which courts found collateral estoppel inapplicable because the parties based their claims and/or defenses on new and substantively different provisions that were not part of the contracts or plans considered by the prior court, simply do not apply here. *See Duran v. AT&T Corp.*, No. C-2-99-418, 2001 U.S. Dist. LEXIS 22327, at *20 (S.D. Oh. Aug. 22, 2001) (defendant's defense regarding breach of contract claim was based on a new transfer provision that was not part of the collective bargaining agreement in the prior litigation); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 980-82 (6th Cir. 2000) (plaintiff's claims were based on a new plan that eliminated the retirement subsidy that "gave rise" to the claims in the prior litigation); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 945, 952-54 (9th Cir. 2002) (plaintiff's claims were based on new plans with a substantively different water release provision than those in the prior litigation); *see also* Pl. Br. at 13.

**3. RBC's Failure To Directly Raise The "Bonus Program" Defense In *Tolbert* Does Not Preclude Collateral Estoppel.**

RBC cannot avoid collateral estoppel by asserting that the WAP is a "bonus program" under 29 C.F.R. § 2510.3-2(c).

First, despite RBC's claim to the contrary (Def. Br. at 12), whether the WAP was a "bonus program" was "actually litigated" in *Tolbert*. In RBC's Appellate Brief, RBC



contrasted the WAP to the bonus program considered in *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999), contending that "while it is true the WAP is not a 'pure' bonus plan, nothing in [29 C.F.R. § 2510.3-2(c)] requires purity." Declaration of Elizabeth S. Weinstein ("Weinstein Opp'n Decl."), Ex. 5 (Appellees' Br., at 37-38, Civ. App. 13-20213 (5th Cir. Oct. 16, 2013)). In other words, RBC argued in *Tolbert* that the "bonus program" framework, including the "systematically deferred" condition, applied to the WAP despite the WAP not being a "'pure' bonus plan." Thus, RBC did "actually litigate" this issue in the *Tolbert* case. [1]

Second, even if RBC had declined to expressly argue in *Tolbert* that the WAP was a "bonus program," collateral estoppel still applies. Where "the party against whom preclusion is sought did in fact litigate an issue…and suffered an adverse determination, … new arguments may not be presented to obtain a different determination of that issue." Restatement (Second) or Judgments § 27. Here, the "issue" that *Tolbert* estops RBC from re-litigating is whether the WAP is an employee pension benefit plan, and RBC's claim that the WAP is a "bonus program" is merely a new contention or a new defense related to that "issue" (or, more accurately, a defense RBC previously argued only half-heartedly).

Under Ninth Circuit law "once an *issue* has been raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co.,* 53 F.3d at 1063 (emphasis in original) (citation omitted); *see also Advanced Display Sys. v. Kent State Univ.*, No. 3-96-CV-1480-BD, 2002 U.S. Dist. LEXIS 12575, at *37 (N.D. Tex. July 10, 2002) (noting that all the defenses raised in the prior litigation "[had] been rejected by either the court or the jury" and that "[t]o the extent that any other defenses exist, [the plaintiff] is precluded from litigating them under the

---

[1] RBC made similar arguments in its summary judgment briefing before the Southern District of Texas, detailing the "parallels between the WAP and a typical bonus program." *See* Weinstein Opp'n Decl., Ex. 3 (Def. Reply in Sup. of Mot. for Sum. Judg., at 3-4 and n.2, No. 4:11-CV-107 (S.D. Tex. Mar. 26, 2012)); *see also id.* Ex. 4 (Def. Mot. for Sum. Judg., at 23-25, No. 4:11-CV-107 (S.D. Tex. Jan. 26, 2012)).



YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

doctrine of collateral estoppel"); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 257-58 (D.C. Cir. 1992).

RBC could have more directly presented the "bonus program" argument in *Tolbert*, but opted not to do so.[2] As such, collateral estoppel plainly bars RBC from re-litigating the "entire issue" of whether the WAP is a pension plan, including RBC's contention that the WAP is a "bonus program."

### 4. RBC's Changing Administration Of The WAP Does Not Preclude Collateral Estoppel.

RBC's contention that collateral estoppel does not apply because its administration of the WAP has changed over time ignores that the "express terms" of a plan can dictate whether the plan is covered by ERISA. 29 U.S.C. § 1002(2)(A). Indeed, the Fifth Circuit looked to those express terms (and no further) in *Tolbert*. *Tolbert*, 758 F.3d at 625-26 (finding WAP was a pension plan based on analysis of express terms alone); *see also In re Meinen*, 228 B.R. 368, 381 (Bankr. W.D. Pa. 1998) ("by several of its express terms" the plan meets the definition of "employee pension benefit plan"). In fact, courts caution against consideration of evidence that employers administer plans in ways that contradict or modify the "express terms" of a plan, as "it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1523 (9th Cir. 1993).

Because the *Tolbert* Court found that the WAP was a pension plan based solely on its express terms and because, as RBC concedes, the changes in RBC's administration of the WAP over time did not result from any modification to the WAP's express terms (Def. Br. at 14), those purported changes do not affect the WAP's status as an ERISA-covered plan or negate the preclusive effect of *Tolbert* on this issue.

---

[2] Even if RBC had raised the "bonus program" argument more directly in *Tolbert*, it would not have affected the outcome as the *Tolbert* Court based its decision on the four corners of the WAP, not on any aspect of the WAP's *administration*, such as RBC's payment of bonuses to participants. *See* Section II(A)(4), *infra*.

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON
PENSION PLAN ISSUE
NO. 3:16-cv-05616-RBL – Page 7



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

**5.** **Conversion Of The WAP From A Covered Plan To An Uncovered Plan Would Violate The Anti-Cutback Rule.**

RBC's contention that it made modifications to the WAP's administration that result in it no longer being an ERISA-covered employee pension benefit plan (Def. Br. at 11-12) also implicates 29 U.S.C. § 1054(g)(2), which prohibits a plan from removing participant protections and benefits. *See Andersen v. DHL Ret. Pension Plan*, 766 F.3d 1205, 1216 (9th Cir. 2014) ("The anti-cutback rule [29 U.S.C. § 1054(g)(2)] 'treat[s] as reducing accrued benefits' any 'plan amendment which has the effect of…eliminating an optional form of benefit.'"). In other words, any argument by RBC that *Tolbert* has no preclusive effect because RBC substantively modified the WAP after the 2008 Plan Document to render it an uncovered plan would be a concession that it has removed protections and benefits from employees in violation of the anti-cutback rule.

*       *       *       *       *

For all of these reasons, *Tolbert* has a preclusive effect on this case and prevents RBC from re-litigating whether the WAP is a pension plan under 29 U.S.C. § 1002(2)(A).

**B.** **The WAP Is An "Employee Pension Benefit Plan" Under 29 U.S.C. § 1002(2)(A) Because The WAP Results In Deferral Of Income For Periods Extending To The Termination Of Covered Employment Or Beyond.**

Even if collateral estoppel did not apply, however, the WAP plainly is a pension plan under ERISA. An "employee pension benefit plan" is "any plan, fund, or program…maintained by an employer to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A)(i)-(ii). In *Rich v. Shrader*, the Ninth Circuit further articulated that "the paramount consideration is whether the primary purpose of the plan is to provide deferred compensation or other retirement benefits." 823 F.3d 1205, 1210 (9th Cir. 2016). Plans that provide "bonuses for work performed" and otherwise would not meet the pension plan definition of 29 U.S.C.

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

§ 1002(2)(A) are not subject to ERISA unless they "systematically defer" the bonus payments "to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c) (2006).

RBC improperly employs the "primary purpose" language used in *Rich v. Shrader* to obscure the "results" element of 29 U.S.C. § 1002(2)(A). Indeed, RBC attempts to equate the *Tolbert* Court's finding that the WAP did not meet subsection (i) of 29 U.S.C. § 1002(2)(A) with the contention that the WAP's "primary purpose" is not income deferral. Def. Br. at 13. In doing so, RBC repeats the same mistake it made in the *Tolbert* case— collapsing subsections (i) and (ii) of 29 U.S.C. § 1002(2)(A). Def. Br. at 14-15.

As the statute and courts applying that law make clear, the "express terms" *or* "surrounding circumstances" may either "provide" *or* "result" in a deferral of income for periods extending to termination and beyond. *See Tolbert*, 758 F.3d at 624. Indeed, the *Tolbert* Court specifically faulted RBC for arguing that the "critical inquiry" was whether the WAP was "designed for the purpose of paying retirement income," because by doing so, RBC improperly "conflat[ed] subsections (i) and (ii)." *Id.* The Fifth Circuit "reject[ed] that approach," explaining that "RBC's reading would render the entirety of subsection (ii) superfluous, an unacceptable result." *Id.*; *see also Darden v. Nationwide Mut. Ins. Co.*, 922 F.2d 203, 207 (4th Cir. 1991) ("Our court has never held that, to fall within subsection (ii), a plan must be designed for the purpose of paying retirement or post-termination income."). Moreover, any doubt as to whether the WAP passes the "primary purpose" inquiry is eliminated by the Ninth Circuit holding up the WAP as a prime example of a plan for which the "main purpose was to allow for the deferral of compensation." *Rich*, 23 F.3d at 1211.[3]

---

[3] RBC attempts to discredit *Tolbert* by claiming the Fifth Circuit failed to look beyond the plan document's statement of purpose, and mistook the WAP's deferral of compensation for automatic ERISA-coverage. Def. Br. at 17 & n.16, n.18. In doing so, RBC gives the Fifth Circuit insufficient credit; the Fifth Circuit analyzed numerous provisions of the WAP Plan Document, including statements of the WAP's purpose and procedures on vesting and distribution, and *specifically rejected* a construction of 29 U.S.C. § 1002(2)(A) requiring that plans be "designed for the purpose of paying retirement or post-termination income" before finding that the WAP results in a deferral of income and is a "pension plan" under subsection (ii). *Tolbert*, 758 F.3d at 625-

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

RBC's error of "conflat[ing] subsections (i) and (ii)" is as improper in this case as it was in *Tolbert*.

Both the WAP's "express terms" and "surrounding circumstances" show that the WAP's primary purpose was the deferral of participants' income. RBC's claim to the contrary fails because it is dependent upon RBC's improper incorporation of "bonus program" principles into the 29 U.S.C. § 1002(2)(A) definition of "employee pension benefit plans," and is otherwise unsupported by the undisputed evidence in this case.

      **1.**      **RBC Improperly Incorporates "Bonus Program" Principles Into 29 U.S.C. § 1002(2)(A).**

            **a.**      **A Plan's Status As Covered By ERISA Is Not Dependent Upon Its Contributions Being "Systematically Deferred" To Retirement Or Beyond.**

The relationship between 29 U.S.C. § 1002(2)(A) and 29 C.F.R. § 2510.3-2(c) is clear: "if the Court determines that the [plan] falls within the statutory definition of an employee pension benefit plan—that is, if it either 'provides retirement income to employees' or 'results in a deferral of income by employees for periods extending to the termination of covered employment or beyond'—that determination will, in effect, answer the question of whether the [plan] is excluded by way of 29 C.F.R. § 2510.3-2(c)." *Kuhbier v. McCartney*, No. 14-CV-888, 2017 U.S. Dist. LEXIS 33231, at *29-30 (S.D.N.Y. Mar. 8, 2017); *see also Spitz v. Berlin Indus.*, No. 93 C 6355, 1994 U.S. Dist. LEXIS 1576, at *8 n.3 (N.D. Ill. Feb. 16, 1994) ("The regulation at 29 C.F.R. § 2510.3-2(c) essentially states that bonus programs are not covered under ERISA unless they meet the definition of a covered plan in 29 U.S.C. § 1002(2)(A)…if the Plan meets the definition of a covered plan found in section 1002(2)(A), it is not a bonus program excluded from ERISA coverage.").

---

26. The Fifth Circuit also made clear that its decision that the WAP was an ERISA-covered plan depended on more than the "mere fact" of deferral, but instead depended on its finding that WAP's "deferral of income 'ensues from' (or, 'arises as an effect of') the express terms of the WAP [and because] the plaintiffs have 'fore[gone] income…in exchange for receiving income' at a later date." *Id.* (citing *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) and *Boos v. AT&T, Inc.*, 643 F.3d 127 (5th Cir. 2011)).

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

In other words, the "systemically deferred" inquiry is invoked *only if* a plan is a bonus plan. *See Kubier*, 2017 U.S. Dist. LEXIS 33231, at \*29-30 (considering "systemically deferred" condition only *after* finding that the plan at issue was a bonus plan, not as part of the determination that the plan was a bonus plan).

As such, the "systematically deferred" inquiry has no place in determining whether, by its express terms or as a result of its surrounding circumstances, a plan is covered by ERISA. *See Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587, 591 (N.D. Ill. 2006) (rejecting employer's "conten[tion] that the 'systematic deferral' reasoning in bonus plan cases should be applied to non-bonus plans such as the Plan [in that case]" and noting that other than a District of New Jersey case, the court "found no other cases that apply the rules concerning bonus plans to non-bonus plans"); *see, e.g., Spitz*, 1994 U.S. Dist. LEXIS 1576, at \*8 (deciding, in order, that the relevant plan "does not defer income to the termination of employment or beyond" under 29 U.S.C. § 1002(2)(A) and "thus…does not meet the definition of a covered plan in subsection (ii)," and that "[t]herefore, we must determine if the Plan in question systematically defers payment…"). As the Fifth Circuit explained in *Tolbert*:

> The regulation [29 C.F.R. § 2510.3-2(c)] is designed "to clarif[y] the limits of the defined terms 'employee pension benefit plan' and 'pension plan'…by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans." § 2510.3-2(a). The WAP is not among the "specific plans" identified in § 2510.3-2(c), and we therefore decline to require the WAP to satisfy the "systematically deferred" condition. In other words, the WAP fits comfortably within the meaning of § 1002(2)(A)(ii), and nothing in § 2510.3-2(c) takes it out.

*Tolbert*, 758 F.3d at 626. Here, RBC once again improperly incorporates the "systematically deferred" condition as part of its analysis of whether the WAP is ERISA-covered or, instead, a bonus program. Def. Br. at 19-24. Rather, consideration of the "systematically deferred" condition would only be proper *after* a determination that the



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

WAP was a bonus program (which it is not) as a means for determining whether, despite

the WAP being a bonus program, the WAP was nonetheless covered by ERISA.

      **b.**      **RBC Improperly Conflates The Standard Used By Courts To Determine Whether Bonus Payments Are Systematically Deferred With The Standard For What Contributions Result In A Deferral Of Income To Termination Or Beyond.**

      RBC's analysis of whether the WAP results in a deferral of income to termination of

employment or beyond under 29 U.S.C. § 1002(2)(A)(ii) is fundamentally flawed because

RBC improperly includes the "systematically deferred" condition from 29 C.F.R. § 2510.3-

2(c). When analyzing the purpose of a plan under 29 U.S.C. § 1002(2)(A)(ii), courts hew

closely to the "results in a deferral" language of the statute, seeking to determine whether "a

deferral of income arises as an effect, issue or outcome from the plan." *See Tolbert*, 758

F.3d at 625-26. Courts applying the "systematically deferred" condition to bonus plans

instead look to additional factors such as whether income was "regularly deferred" (*see*

*Emmenegger,* 197 F.3d at 933), or, rather, whether deferral was merely incidental to the

bonus program (*see Houston v. Saracen Energy Advisors, LP*, No. H-08-1948, 2009 U.S.

Dist. LEXIS 26307, at *12 (S.D. Tex. Mar. 27, 2009)). Without exception, the cases RBC

cites show courts first finding that, by their express terms or surrounding circumstances, the

purpose of the plan at issue is *not* income deferral or retirement savings, and thus that the

plan was a bonus program. Only then do these courts apply the "systematically deferred"

condition to determine whether the bonus program at issue can be considered an ERISA-

covered pension plan. *See* Def. Br. at 20-21 and n.21 and n.23.[4]

---

[4]*Emmenegger*, 197 F.3d at 932-33 (finding Phantom Stock Plan to be a bonus program, not an ERISA-covered pension plan, based on its statement of purpose and objectives describing the plan as an incentive plan and for the interests of the employer; then separately finding bonus payments were not systematically deferred based on optional employee deferral); *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 188-89 (3d Cir. 2003) (finding plan to be a bonus program, not an ERISA-covered pension plan, "because its purpose was to operate as an incentive and bonus program, and not as a means to defer compensation or provide retirement benefits"; then separately finding bonus plan was not ERISA-covered based, in part, on the fact that payments made under plan were "only incidental to the goal of providing current compensation"); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) (considering the optional deferral of bonus and interest allocations pursuant to plan as part of "systematically deferred" inquiry for bonus plan); *Critelli v. Fid. Nat'l Title Ins.*

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

Likewise, RBC's claim that ERISA-covered pension plans must "condition" distributions upon retirement (Def. Br. at 20 & n.22) misapplies a term the DOL uses in the context of plans that did not provide employees the option to defer benefits to retirement.[5] The DOL's advisory opinions that plans that do not allow for compensation deferral to retirement have no bearing on the WAP, which RBC acknowledges "allowed some participants to defer distributions until termination." Def. Br. at 23.

**2.    The WAP's Express Terms Show That The WAP's Primary Purpose Is Deferral Of Income.**

As detailed in Plaintiffs' Brief, and as found by the Fifth Circuit, the express terms of the WAP demonstrate that the primary purpose of the WAP is to defer income. Pl. Br. at 15-20; *Tolbert*, 758 F.3d at 625-26 (finding the WAP's "main purpose was to allow for the deferral of compensation"). These express terms include the WAP plan documents' statement of purpose, which refers to the WAP as a "deferred compensation plan" and describes the WAP as "provid[ing] an opportunity" for participants to either "invest a portion of their compensation" or "achieve wealth accumulation" through "tax-deferred savings and investment options" to "support long-term savings" (Weinstein Decl., Exs. 2, 6-10 and 12 at ¶ 1.1 (Dkt. No. 27 at 35, 116, 136, 155, 175, 198, 245)), the WAP plan documents' subsections governing "voluntary deferred compensation" and "mandatory deferred compensation" and the corresponding vesting subsections (Weinstein Decl., Exs. 2, 6-10 and 12 at ¶¶ 2.2, 2.3 and 4.2 (Dkt. No. 27 at 39, 40, 43, 119, 123, 139, 142, 158,

---

*Co.*, No. 05-CV-0371, 2007 U.S. Dist. LEXIS 16060, at *10 (E.D.N.Y. Mar. 7, 2007) (considering the participant's "mere option" to defer bonus payment insufficient to qualify the bonus for ERISA-coverage under the "systematically deferred" test); *Houston v. Aramark*, 112 F. App'x 132, 136 (3d Cir. 2004) (considering whether bonus plan participants' deferral of income was "systematic" in the context of 29 C.F.R. § 2510.3-2(c)).

[5]*See* DOL Op. Ltr. 82-29A, 1982 ERISA LEXIS 41, at *2 (plan provides for bonus payouts to employees within the quarter); DOL Op. Ltr. 2002-13A, 2002 ERISA LEXIS 32, at *6 (plan provides for some awards to be paid out immediately and others to be paid out immediately upon the employer's receipt of an incentive payment); DOL Op. Ltr. 84-12A, 1984 ERISA LEXIS 35, at *1 (plan provides for compensation deferral for a limited period of three years); DOL Op. Ltr. 81-24A, 1981 ERISA LEXIS 67, at *2-3 (plan provides for compensation deferral for a limited period of five years).



YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

161-62, 179-80, 183, 202-03, 206, 250, 253)), and the WAP plan documents' sections on distribution that detail available forms of distribution upon retirement (Weinstein Decl., Exs. 2 and 7-8 at ¶ 5.3(b)(ii) (Dkt. No. 27 at 45, 144, 163), Exs. 9-10 and 12 at ¶ 5.2(b)(ii)) (Dkt. No. at 185, 208, 255) and Ex. 6 at ¶ 5.2(c) (Dkt. No. 27 at 124)).  Pl. Br. at 15-20; *Tolbert*, 758 F.3d at 626.[6]

RBC's attempt to analogize the WAP with non-ERISA plans showcases the difference in purpose between the WAP and those plans.  Whereas the WAP expressly provides in its introductory paragraph (Paragraph 1.1):

> **1.1     General Nature and Purpose of the Plan**.  The Royal Bank of Canada US Wealth Accumulation Plan (the "**Plan**") is a nonqualified, deferred compensation plan pursuant to which a select group of management or highly compensated employees of the Royal Bank of Canada (the "**Company**") and its Participating Subsidiaries (collectively, the "**Employers**") may be offered the opportunity to elect to defer receipt of a portion of their compensation to be earned with respect to the upcoming Plan Year.  The Plan is designed to provide an opportunity for such employees to invest a portion of their compensation in tax-deferred savings and investment options in an effort to support long-term savings and allow such employees to share in the Company's growth and profitability, if any.  The Plan was formerly known as the RBC Dain Rauscher Wealth Accumulation Plan, was amended and restated effective for the Plan Year beginning on January 1, 2005, was further amended and restated effective for the Plan Year beginning on January 1, 2007, and **is hereby further amended and restated effective for the Plan Year beginning on January 1, 2008**.  This Plan restatement supersedes all prior versions of the Plan and any deferrals or contributions made pursuant to a prior version of the Plan will be governed by this Plan.

(Weinstein Decl., Ex. 2),[7] the non-ERISA plans describe themselves as follows:

- "'The Merrill Lynch [FACAAP] reflects MLPF&S's commitment **to reward top producing Private Client Employees**.  The purpose of the Award is **to establish and**

---

[6] In another attempt to discredit the Fifth Circuit's finding in *Tolbert*, RBC claims the Fifth Circuit "apparently spotted the buzzwords 'Retirement' and 'Separation' in the WAP, without considering their actual operation or resulting impact on the relevant legal question."  Def. Br. at 23.  RBC also claims that the Fifth Circuit's usage of "contemplate" somehow shows that it did not make a clear finding that the WAP's express terms resulted in post-termination deferrals.  *Id.* at p. 24.  To the contrary, the fact that the Fifth Circuit found that "the WAP fits comfortably within the meaning of subsection (ii)" shows that the Fifth Circuit considered the WAP to "result[] in a deferral of income by employees for periods extending to the termination of covered employment or beyond," and RBC offers no basis—other than its own disagreement with the Fifth Circuit—to doubt the thoroughness of the court in analyzing the WAP's "vesting" and "distribution" sections, which are specifically discussed by that court.  *Tolbert*, 758 F.3d at 626.

[7] This is a portion of the 2008 Plan Document.  Weinstein Decl., Ex. 2 (Dkt. No. 27 at 31-53).  Paragraph 1.1 of the 2010 and 2011 Plan Documents are identical, and Paragraph 1.1 of the 2005, First 2007, Second 2007, and 2012 Frozen Plan Documents are substantively identical.  Weinstein Decl. Ex. 26 (Dkt. No. 27 at 474-85).



**retain a strong sales force and professional managers** by recognizing the benefits of their contributions to MLPF&S.'" *Callan v. Merrill Lynch & Co.*, No. 09-CV-0566, 2010 U.S. Dist. LEXIS 89997, at *22 (emphasis added) (cited in Def. Br. at 14-15, 23 n.24).

- "The SRP states that its purpose is '**to provide incentives for [BAH] Officers to continue to serve as employees** of the Company and its subsidiaries.'" *Rich v. Shrader*, 823 F.3d 1205, 1210 (emphasis added) (cited in Def. Br. at 1, 13-14, 17, 17 n.18, 18 n.19, 22).

- "The purpose of the 1987 Plan was: '**To advance the interest of [AIG]** by providing certain of the key employees of AIG and of any parent or subsidiary corporation of AIG, upon whose judgment, initiative and efforts the successful conduct of the business of AIG largely depends, with **an additional incentive to continue their efforts** of behalf of such corporations, as well as **to attract to such corporations people of training, experience and ability**.'" *Oatway v. Am. Int'l Group, Inc.*, 324 F.3d 184, 186 (3d Cir. 2003) (emphasis added) (cited in Def. Br. at 14, 15 n.14, 16, 20 n.21).

- "By its express terms, the GCBP was established 'as a deferred compensation plan for Sales Representatives…**for the sole purpose of promoting in career sales representatives the strongest interest in the successful operation of the Company, loyalty to the organization and increased effectiveness of their work** by providing a method for sharing in the growth of the Company based upon the amount of Sales Credits they produce in accordance with the terms of the Plan.'" *McKinsey v. Sentry Ins.*, 986 F.2d 401, 406 (10th Cir. 1993) (emphasis added) (cited in Def. Br. at 15 n.14, 17 n.17, 20 n.21, 21 n.23, 23 n.24).

- "By its own terms, the PSP's purpose is **to promote the interests of the Corporations and their stockholders** by aligning the interests of senior management of the Corporations with those of the stockholder, **encouraging them to be employed by and to remain in the employ of the Corporations, providing them with additional incentives for industry and efficiency and compensating them for services rendered to the Corporations.**" *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931 (8th Cir. 1999) (emphasis added) (cited in Def. Br. at 14, 15 n.14, 18, 18 n.19, 19, 20 n.21, 21).

- "'The purpose of the Wells Fargo & Company' Long-Term Incentive Compensation Plan (the "Plan") is **to motivate key employees to produce a superior return to the stockholders of Wells Fargo & Company** by offering them an opportunity to participate in stockholder gains, by facilitating stock ownership and by rewarding them for achieving a high level of corporate financial performance. The Plan is also intended **to facilitate recruiting and retaining talented executives** for key positions by providing an attractive capital accumulation opportunity.'" *Segovia v. Schoenmann*, 404 B.R. 896, 904 (Bankr. N.D. Cal. 2009) (emphasis added) (cited in Def. Br. at 17 n.17).

- "[T]he EGP's primary purpose was **to reward employees and encourage longevity** by creating shares that employees could cash-out upon termination of their employment with the company." *Miller v. Olsen*, No. 3:15-cv-00571, 2016 WL 4154936, at *3 (D. Or. Aug. 4, 2016) (emphasis added).

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

- "The 'performance stock options' under the 1984 Plan were 'designed to enable key ARA management to purchase shares of ARA Holding Company stock on terms that will give them **a direct, sustained, and long-term interest in ARA's success**." *Houston v. Aramark Corp.*, No. 04-1103, 112 Fed. Appx. 132, at *5 (3d Cir. 2004) (emphasis added) (cited in Def. Br. at 17 n.17, 23 n.24).

- "The Plan explicitly states that its purpose is to provide select employees '(a) **incentives related to their performance and continued employment**; (b) **an opportunity to participate in the profits (and losses) of the funds managed by Saracen Energy Advisors, LP**; and (3) **deferred compensation**.'" *Houston v. Saracen Energy Advisors, LP*, No. H-08-1948, 2009 U.S. Dist. LEXIS 26307, at *10 (S.D. Tex. Mar. 27, 2007) (emphasis added) (cited in Def. Br. at 17 n.17, 23 n.24).

- The purpose of the Phantom Stock Plan, as stated therein, was to 'provide key employees with **financial incentives for improving the long-term performance' of Bancorp** and '**increasing the value' of the institution to its parent company**." *Hahn v. National Westminster Bank, N.A.*, 99 F. Supp. 2d 275, 277 (E.D.N.Y. 2000) (emphasis added) (cited in Def. Br. at 20 n.20, 23 n.24).

- "The Plan purports to 'govern[] the upfront and deferred elements of the discretionary **bonus awards** for the 2011 performance years and is designed **to reward employees** in line with their contribution to the 2011 profits of [BNP].'" *Forte v. BNP Paribas*, No. 14-CV-8556, 2015 U.S. LEXIS 74282, at *9 (S.D.N.Y. Jun. 8, 2015) (emphasis added) (cited in Def. Br. at 17).

The contrast is clear: pursuant to their express terms, the primary purposes of these non-ERISA plans are, without exception, recruiting, retention, rewarding employees, and benefitting the employer, while the WAP's primary purpose is income deferral to support long-term savings.[8]

RBC's attempts to wave off the WAP's express terms, claiming that they cannot be read to "result in" post-employment distributions because they provide participants the option to defer income (Def. Br. at 21), is merely another articulation of the "systematically deferred" condition, which has no place in this inquiry. *See* Section II(B)(1)(b), *supra*. The Fifth Circuit rebuffed that same argument in *Tolbert*, distinguishing between cases (such as

---

[8] The WAP's express terms also show that a secondary purpose of the WAP is to "allow[] [participants] to share in the Company's growth and profitability." Weinstein Decl., Ex. 2 (Dkt. No. 27 at 31-53). But this is entirely consistent with the primary purpose of deferral of compensation. As described elsewhere, WAP participants did defer compensation they otherwise would have received ("voluntary contributions") into notional RBC stock, which would allow those participants to share in RBC's growth and profitability. But this purpose plainly was only secondary, as participants were not required to keep all WAP assets in that notional RBC stock, but could from select an array of other notional investments.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON
PENSION PLAN ISSUE
NO. 3:16-cv-05616-RBL – Page 16

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

*Emmenegger*) finding that the "mere option to defer receipt of benefits" in bonus plans "does not trigger ERISA coverage," and cases (such as *Tolbert*) finding that the WAP's "option to defer income…does not change the fact that the 'express terms' of the WAP 'result [ ] in a deferral of income.'" *Tolbert*, 758 F.3d at 626-27.

For plans, such as the WAP, for which the primary purpose is income deferral, the law is clear that it "matters not [for the purposes of ERISA-coverage] that employees participating in the [Plan] have the option of withdrawing employer contributions from the Plan prior to either their retirement or termination of covered employment." *In re Meinen*, 228 B.R. at 380; *see also Holzer*, 458 F. Supp. at 592-3 (*possibility* for employees to receive distribution after retirement is sufficient for ERISA coverage); *see generally* Pl. Br. at 17. Additionally, RBC's focus on the mechanics of the WAP's vesting requirements is merely a red herring—ERISA coverage does not depend upon the timing of vesting retirements, but upon whether the plan provides retirement income or results in deferral of income for periods extending to the termination of employment or beyond.

The only other express terms to which RBC points are the plan documents' own characterizations of the WAP as "not intended" to be an ERISA pension plan. Def. Br. at 21. Such language is insufficient as a matter of law to establish that the WAP is not an ERISA-covered pension plan. *See McCloone v. Intel Corp.*, 1 F. App'x 715, 716 (9th Cir. 2001) ("the impression conveyed [by employers] to laypersons does not establish whether ERISA coverage exists") (cited in Def. Br. at 17 n.16).

Additionally, courts look to promotional materials to determine whether, by a plan's express terms, the purpose of a plan is to defer income to retirement or beyond. *See* Pl. Br. at 19 (citing *Darden v. Nationwide Mut. Ins. Co.*, 922 F.2d 203, 207-8 (4th Cir. 1991) and *Freund v. Marshall & Illsley Bank*, 485 F. Supp. 629, 633-34 (W.D. Wisc. 1979)). RBC cites to such evidence as compensation plans and the testimony of WAP administrators referencing that the WAP served "to attract[] and retain[] top-performing financial

YARMUTH WILSON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800 F 206.516.3888

advisors." Def. Br. at 14-15.  That evidence, while uncontroverted, is also fundamentally insufficient to establish that the WAP does not result in deferral of income to termination of employment or beyond.  *Any* employee pension benefit plan necessarily serves as an enticement to would-be employees or as an retention incentive for current employees, but the fact that a plan affords these benefits alone is insufficient to demonstrate the "purpose" of a plan or overcome the test that the plan results in deferral of income to the termination of employment or beyond.  Here, even beyond the provisions of the WAP plan documents, the record contains ample evidence of RBC's intended purpose to provide deferred income to participants.  For example, WAP marketing materials state: "The [WAP], our **deferred compensation program**, also offers you the significant opportunity to build long-term wealth."  Weinstein Decl., Ex. 14 (Dkt. No. 27 at 272) (emphasis added).  Indeed, in its WAP Overview materials, RBC referred to the WAP as "a defined contribution supplemental executive **retirement plan** (DC SERP)."  Weinstein Decl., Ex. 15 (Dkt. No. 27 at 288) (emphasis added).  And RBC's WAP administrators concede that the WAP was a "key element" of RBC's "Finishing Well" initiative.  Buchert Dep., 51:22-52:5; 52:16-25 (Dkt. No. 27 at 57-58); Sikich Dep., 157:8-25 (Dkt. No. 27 at 27).

As indicated by the WAP plan documents, and by RBC's own characterization of the WAP in promotional materials, the WAP results in deferral of income to the termination of employment or beyond.

### 3.     "Surrounding Circumstances" Show That The WAP Results In The Deferral Of Income To Termination Of Employment Or Beyond.

Even if a plan is not a pension plan by its express terms, "it might be a pension plan if it is communicated to participants or administered in a manner that has the effect of providing retirement income to employees or resulting in a deferral of income by employees for periods extending to the termination of covered employment or beyond." DOL Op. Ltr. 81-27A, 1981 ERISA LEXIS 64, at *8; *see also Vincenzo v. Hewlett-Packard Co.*, No. 3:12-cv-03480-JCS, 2012 U.S. Dist. LEXIS 146161, at *11 (N.D. Cal. Oct. 10,



2012). As RBC acknowledges, among the factors considered are whether "distributions under the Plan are skewed towards the last years of participants' careers." Def. Br. at 23 (citing DOL Op. Ltr. 81-27A, 1981 ERISA LEXIS 64, at *8).

Both Ms. Sikich and Ms. Buchert—the only RBC employees identified in RBC's initial disclosures—testified that a central feature of the WAP was providing participants the opportunity to elect to defer distributions until after their separation or retirement from RBC. Sikich Dep., 55:3-7, 93:12-23 (Dkt. No. 27 at 14, 22); Buchert Dep., 53:8-13; 138:22-139:12 (Dkt. No. 27 at 59, 61-62). Ms. Sikich also testified that participants allocated a large percentage of WAP assets (in some years over 50% of WAP assets) to be distributed in retirement or after separation from employment (Sikich Dep., 214:17-215:2 (Dkt. No. 27 at 28-29)), thus making clear that WAP distributions were "skewed" toward post-employment. Plaintiffs have requested that RBC produce the relevant data, showing what percentage of WAP assets were elected each year for in-service distribution versus distribution post-employment. However, to date, RBC has not produced that information. Weinstein Opp'n Decl., Exs. 1, 2.[9] RBC also asserts that between 51% and 66% of WAP participants were scheduled to receive in-service distributions of some portion of their WAP benefits between 2007 and 2011. Def. Br. at 24. This does not support RBC's contention that the WAP does not meet 29 U.S.C. § 1002(2)(A)(ii)'s definition of a pension plan as resulting in deferral of income for periods extending to the termination of employment or beyond. At worst for Plaintiffs, this shows that between 34% and 49% of

---

[9] Even without this data, there is a sufficient basis for this Court to deny Defendants' Motion for Summary Judgment on the basis of (1) collateral estoppel and/or (2) a finding that the WAP is an ERISA-covered pension plan based on its express terms. However, if the Court is disinclined to deny Defendants' Motion on collateral estoppel and/or express terms grounds, and instead reaches the question of whether, by the WAP's surrounding circumstances, it is an ERSIA-covered pension plan, Plaintiffs request that this Court grant the Rule 56(d) Motion that Plaintiffs are filing in simultaneously with Plaintiffs' Opposition.



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

WAP participants in those years elected *only* post-employment distributions.[10] The

percentage of employees who selected at least some post-employment distributions may be

far higher, as RBC admits that participants could select different distribution schedules each

year and even different distribution schedules for different forms of WAP contributions

(voluntary, mandatory, or company). *See* Def. Br. at 24. RBC has not provided that

information to Plaintiffs or this Court. Further, RBC's statistics reveal nothing about the

percentage or amount of WAP assets slated for distribution in-service or post-employment,

although Plaintiffs have requested that information. *See* Weinstein Opp'n Decl. ¶¶ 6, 7.

As with the WAP's express terms, these surrounding circumstances show that the

WAP is an ERISA-covered plan that provides or results in the deferral of income to

termination of employment or beyond.

**C.    The WAP Is Not A Bonus Program.**

The WAP cannot be considered a bonus program because it does not meet the well-

established criteria courts use to define bonus programs. Additionally, even if the WAP

was a bonus program—which it is not—it would be subject to ERISA because the

contributions made to the WAP were systematically deferred.

**1.    The WAP Does Not Meet The Established Criteria For A Bonus Plan.**

When determining whether a plan is a bonus program under 29 C.F.R. § 2510.3-

2(c), courts consider factors including the "express purpose" of the plan, the employer's

discretion in awarding benefits, whether contributions to the plan took the form of bonus

payments, whether those payments were systematically deferred to separation or beyond,

how the employer described the plan in promotional materials, and whether the employer

imposed penalties to deter distribution pre-retirement. Pl. Br. at 22 (citing *Rich v. Shrader*,

---

[10] WAP participants who scheduled in-service distributions of any part of their WAP benefits, even if they
elected to defer the majority of their WPA benefits to retirement, would be included in the 51% to 66%
figures cited by RBC.



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

No. 09-CV-0652, 2011 U.S. Dist. LEXIS 108616, at *19 (S.D. Cal. Sep. 22, 2011), *aff'd*

*Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016).

While RBC correctly points out that part of Plaintiffs' WAP contributions took the form of productivity and loyalty bonuses paid by RBC to Plaintiffs (Def. Br. at 24; Pl. Br. at 3 n.4 & 23-24), RBC fails to acknowledge that these bonuses accounted for only one form of multiple kinds of WAP contributions. Pl. Br. at 23. Any WAP participant's contributions could consist of up to three separate components: (1) voluntary deferral contributions made by an employee entirely at the employee's discretion, which used earned funds that otherwise would be paid to the employee on a regular basis, (2) mandatory deferral contributions, which were funds earned by the employee based on RBC's compensation system but that RBC forced certain employees to contribute to the WAP, and (3) company contributions made by RBC at RBC's discretion. *See* Weinstein Decl., Exs. 2, 6-12 (2005-2012 WAP Plan Documents) ¶¶ 2.2-2.3, 2.6 (Dkt. No. 27 at 39-41, 119-20, 139-40, 158-59, 179-81, 202-04, 226-28, 250-51). Company contributions, in turn, were composed of "matching contributions" (*i.e.*, RBC's match of an employee's voluntary contributions) and "discretionary contributions." *Id.* Of all of these forms of contributions, only "discretionary contributions" (which themselves were composed of performance and loyalty rewards) conceivably could be considered "bonuses."

Plaintiffs have requested that RBC produce information that shows the WAP assets derived from each contribution type. However, to date, RBC has not produced that information. Weinstein Opp'n Decl., Exs. 1, 2. Plaintiffs anticipate that information, if produced by RBC, will show that a substantial percentage of assets in the WAP are derived from forms of contributions *other than* discretionary contributions—the only form of contribution that could be considered a "bonus." RBC's "nothing-to-see-here" approach to the forms of deferred compensation that cannot be considered bonuses is understandable, as they deal yet another fatal blow to RBC's bonus program argument. *See, e.g.*, *Holzer*, 458

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1    F. Supp. 2d at 591 (plan cannot be considered a bonus plan because awards were not made

2    to employees as performance rewards).

3            That one form of WAP contribution consisted in part of bonus payments does not

4    make the WAP as "bonus plan."  Indeed, in *Tolbert* the fact that certain contributions took

5    the form of bonus payments did not factor into the Fifth Circuit's analysis under 29 U.S.C.

6    § 1002(2)(A), nor did it stop the Fifth Circuit from concluding that "[The WAP] is not a

7    bonus plan."  *Tolbert*, 758 F.3d at 624-27; *see also Darden*, 922 F.3d at 207-08

8    (characterizing contributions to plan as "contributions made by Nationwide on the agent's

9    behalf…based upon a percentage of the original and renewal fees which he has earned" and

10   finding that the plan is, by its express terms, an ERISA-covered pension plan and not a

11   bonus plan).

12           Plaintiffs concede that deferral of bonuses does not, alone, dictate that a bonus

13   program must be ERISA-covered.  Def. Br. at 17.  However, the cases cited by RBC to

14   demonstrate that plans incorporating income deferral can be bonus programs have no

15   bearing on the determination of whether the WAP is a bonus program.  Unlike the WAP,

16   each of the plans considered in the cases cited by RBC expressly describes its primary

17   purpose as employee rewards or incentive payments.  *See McKinsey*, 986 F.2d at 406 (*see*

18   *supra*); *Saracen Energy Advisors*, 2009 WL 890384, at *10 (*see supra*); *In re Segovia*, 404

19   B.R. at 904 (*see supra*).  Indeed, RBC cites *Forte v. BNP Paribas* for that exact finding: "a

20   'Deferred Compensation Scheme' that 'defers a proportion of [annual] bonus awards'

21   subject to forfeiture 'is a bonus plan,' *where the 'clear purpose of this plan is to incentivize*

22   *employee performance, not to allow employees to collect retirement income*.'"  2015 U.S.

23   Dist. LEXIS 74282, at *9 (emphasis added) (Def. Br. at 17).  Here, the WAP is *not* a bonus

24   plan because, unlike the cases cited by RBC, the "clear purpose" of the WAP is to defer

25   income to support participants' "long-term savings."  Weinstein Decl., Exs. 2, 6-10 & 12 at

26   § 1.1 (Dkt. No. 27 at 35, 116, 136, 155, 175, 198, 221, 245).  Further, as referenced above,

YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

the WAP contained multiple other forms of contributions that cannot be considered bonus awards, including the employees' own non-bonus earnings.

*Emmennegger* is not instructive for the same reason. While both the WAP and the PSP considered in *Emmennegger* provided contributions subject to vesting, allowed for the appreciation of awards, and permitted participants to take distributions upon the vesting of contributions (Def. Br. at 18-19), critically, the WAP and the PSP differ in their purposes. While the WAP plan documents made explicit that purpose of the WAP is to defer income to support participants' "long-terms savings," the PSP's purpose, by its own terms, is the promotion of the employer, retention of employees, and provision of incentives to employees for "industry and efficiency." *Emmenegger*, 197 F.3d at 931 (*see* Section II(B)(2), *supra*).

As to the "discretion" factor, RBC mischaracterizes itself as having "retained significant discretion over WAP awards." Def. Br. at 16. In fact, the calculation of bonus payments as WAP contributions was highly formulaic and based on annual production and years of service. *See* Pl. Br. at 23-24. Additionally, the WAP promotional materials consistently characterized the WAP as a deferred compensation plan (at times even referring to it as a retirement plan). *Id.* at p. 24 (citing Weinstein Decl., Ex. 15 (WAP Overview) at slide 1 (Dkt. No. 27 at 288)).

The WAP does not meet the bonus program criteria, nor are the plans found by courts to be bonus programs comparable to the WAP in their purpose or in-service distribution provisions. The WAP simply is not a bonus plan.

**2.    The "Systematic Deferral" Question Is Not Reached, But Even If It Is, Income Deferral Was Not Merely "Incidental" Or By "Happenstance."**

Even if the WAP could be considered a bonus program—which it cannot—the WAP would nonetheless be subject to ERISA because the WAP contributions were "systematically deferred" to the termination of covered employment or beyond. Courts have declined to find that the "systematically deferred" condition is met when plans have a



YARMUTH WILSDON PLLC

1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

main purpose other than compensation deferral (*see Shrader*, 2011 U.S. Dist. LEXIS 108616, at *21; *Emmenegger*, 197 F.3d at 933; *Aramark*, 112 Fed. Appx. at *3) or when plans allow deferral only up to a maximum number of years (*see Saracen*, 2009 U.S. Dist. LEXIS 26307; DOL Op. Ltr. 82-29A, 1982 ERISA LEXIS 41, at *2; DOL Op. Ltr. 2002-13A, 2002 ERISA LEXIS 32, at *6; DOL Op. Ltr. 84-12A, 1984 ERISA LEXIS 35, at *1; DOL Op. Ltr. 81-24A, 1981 ERISA LEXIS 67, at *2-3). Unlike plans that failed to meet the "systematically deferred" condition, the WAP's self-stated purpose was compensation deferral, and the WAP placed no maximum term or other restrictions on participants' deferral elections. Weinstein Decl., Exs. 2, 6-12 at ¶¶ 1.1, 4.1-4.2 (Dkt. No. 27 at 35, 43, 116, 123, 136, 142, 155, 161-62, 175, 183, 198, 206, 221, 230-31, 245, 253). Thus, by the WAP's "design," RBC provided participants with deferred compensation, and participants could and did elect to defer compensation to the termination of employment (as opposed to in *Saracen*, for example, where employees who retired within the three-year maximum deferral term merely happened to receive deferred income during retirement). Thus, even if the WAP could be considered a bonus plan, it nonetheless would be an employee pension benefit plan under 29 U.S.C. § 1002(2)(A).

### III.    CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion for Summary Judgment on Pension Plan Issue and grant Plaintiffs' Motion for Partial Summary Judgment, finding that the WAP is an employee pension benefit plan under 29 U.S.C. § 1002(2)(A)(i)-(ii).

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Dated:  October 20, 2017.

**YARMUTH WILSDON PLLC**

By: *s/Jeremy E. Roller*
Jeremy E. Roller, WSBA No. 32021
Elizabeth Weinstein, WSBA No. 45763
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Phone:  206.516.3800
Fax:  206.516.3888
Email: jroller@yarmuth.com
          eweinstein@yarmuth.com

*Attorneys for Plaintiffs Marty Paul and
Brian Buskirk*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON
PENSION PLAN ISSUE
NO. 3:16-cv-05616-RBL – Page 25

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**PERKINS COIE LLP**
Kevin J. Hamilton
William B. Stafford
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Email: khamilton@perkinscoie.com
        wstafford@perkinscoie.com

**MORGAN, LEWIS & BOCKIUS LLP**
Sari M. Alamuddin, *pro hac vice*
Christopher J. Boran, *pro hac vice*
Matthew A. Russell, *pro hac vice*
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Email: sari.alamuddin@morganlewis.com
        christopher.boran@morganlewis.com
        matthew.russell@morganlewis.com

*Attorneys for Defendants RBC Capital Markets, LLC, Royal Bank of Canada, and Royal Bank of Canada US Wealth Accumulation Plan*

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: October 20, 2017 at Seattle, Washington.

*s/Sue Stephens*
Sue Stephens, Legal Assistant



YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888