HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARTY PAUL, an individual, and
BRIAN BUSKIRK, an individual,

        Plaintiffs,

   v.

RBC CAPITAL MARKETS LLC, et al.,

        Defendants.

CASE NO. C16-5616 RBL

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the parties' cross motions for partial summary judgment [Dkt. #24 and Dkt. #26]. Plaintiffs Marty Paul and Brian Buskirk are financial consultants formerly employed by Defendant RBC Capital Markets (RBC). Paul and Buskirk allege that after they separated from RBC, Defendants violated the Employee Retirement Income Security Act (ERISA) by improperly forfeiting millions of dollars of compensation that Paul and Buskirk earned through participation in RBC's Wealth Accumulation Plan (WAP). Paul and Buskirk assert that the Fifth Circuit has already determined that RBC's WAP is an "employee pension benefit plan" subject to ERISA, and that RBC is collaterally estopped from re-litigating the issue here. RBC disputes that they are collaterally estopped by the Fifth Circuit's decision, and contend that the WAP is a bonus plan designed to recruit and retain top-performing

employees, and not an employee pension benefit plan covered by ERISA. Because the Court would not be aided by oral argument, it resolves this matter on the parties' written submissions.

# I. BACKGROUND

## A. RBC's Wealth Accumulation Plan

The WAP is a deferred compensation plan instituted by RBC's predecessor company for select high-earning RBC employees. RBC made minor modifications in the administration of the WAP from year-to-year, but the "General Nature and Purpose" of the WAP announced at the beginning of the plan document remained largely unchanged:

> [The WAP] is a nonqualified, deferred compensation plan pursuant to which a select group of management or highly compensated employees of [RBC] may be offered the opportunity to elect to defer receipt of a portion of their compensation to be earned with respect to the upcoming Plan Year. The [WAP] is designed to provide an opportunity for such employees to invest a portion of their compensation in tax-deferred savings and investment options in an effort to support long-term savings and allow such employees to share in [RBC's] growth and profitability, if any.

*See e.g.*, Dkt. 25 at 87; Dkt. 27 at 175, 198.

WAP participants' accounts are comprised by three categories of contributions: (1) voluntary deferred compensation, (2) mandatory deferred compensation, and (3) company contributions. Dkt. 24 at 7–9; Dkt. 26 at 4. Voluntary compensation contributions vested immediately whereas mandatory deferred compensation and company contributions typically vested at a later date or upon death or separation of an employee. *See e.g.,* Dkt. 25 at 95. A provision in the WAP states that if an employee is terminated for cause, all of that employee's mandatory deferred compensation and company contributions will be forfeited back to RBC. *See e.g.*, *id.* at 199. RBC froze employee participation in the WAP, effective January 1, 2012, and replaced it with a new deferred compensation plan that was "wholly separate from the [WAP]." Dkt. 27 at 221.

**B. Factual and Procedural Background**

Paul and Buskirk participated in the WAP while employed as financial consultants for RBC. Paul was fired by RBC for cause in 2011. RBC informed Paul that because his termination was for cause, it was forfeiting $1,612,152 in vested and unvested company contributions and mandatory deferrals from his WAP account. Dkt. 25 at 187. Paul subsequently recruited Buskirk to leave RBC and join him at a new financial advising firm in 2012. Although Buskirk voluntarily left RBC for the new firm, RBC still forfeited $297,676 in unvested company contributions and mandatory deferred compensation from Buskirk's WAP account. Dkt. 24 at 11. Both Paul and Buskirk appealed the forfeiture of funds from their WAP accounts through RBC's WAP Committee to no avail.

After exhausting RBC's internal appeals process, Paul initially filed suit in this Court in 2013. *See Paul v. RBC Capital Mkts.*, No. 3:13-cv-5119-RBL. The parties were aware of pending litigation in the Southern District of Texas involving similar claims against RBC by former employees on appeal to the Fifth Circuit. Realizing the potential implications of that appeal, the parties reached a tolling agreement in which Paul voluntarily dismissed his complaint without prejudice and RBC agreed to toll the applicable statute of limitations. Dkt. 1 at 11; Dkt. 24 at 11. Although Buskirk was not a party to the original lawsuit in 2013, he entered into a similar tolling agreement with RBC after the WAP Committee denied his appeal. Dkt. 24 at 11. Buskirk joined Paul in refiling the present lawsuit against RBC in 2016.

**C. Fifth Circuit's Opinion in *Tolbert v. RBC Capital Markets Corp.***

Similar to this case, *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619 (5th Cir. 2014), involved ERISA claims by former RBC employees who had portions of their WAP accounts forfeited when they left their jobs at RBC. The district court in Texas granted RBC's motion for summary judgment, concluding that the WAP was not an employee pension benefit plan subject

to ERISA. *Id.* at 621. The Fifth Circuit reversed and remanded, holding that while the WAP was not designed to provide retirement income, it nonetheless qualified as a pension benefit plan under ERISA because it resulted in the deferral of income by employees for periods extending to separation from employment or beyond. *See* 29 U.S.C. § 1002(2)(A)(i)–(ii); *id.* at 624–26.

## II. LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

# III. ANALYSIS

At issue is whether the WAP is an employee pension benefit plan subject to ERISA. RBC argues that the WAP is not a pension plan, but rather a system for distributing bonuses to attract and retain top employees.[1] Paul and Buskirk contend that RBC is collaterally estopped from re-litigating whether the WAP is a pension plan by the Fifth Circuit's decision in *Tolbert*. Even if collateral estoppel does not apply, Paul and Buskirk argue that the *Tolbert* opinion is persuasive authority and that this Court should similarly conclude that the WAP is an employee pension benefit plan under ERISA.

**A. RBC is collaterally estopped from re-litigating the WAP's status as an employee pension benefit plan.**

The Court first addresses whether the Fifth Circuit's decision in *Tolbert* collaterally estops RBC from litigating the WAP's status as an employee pension benefit plan under ERISA. "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Lab., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 328–29 (1971)). Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant previously litigated unsuccessfully in an action with another party. *Id.* at 329. "In *Parklane Hosiery*, the U.S. Supreme Court authorized the use of offensive nonmutual issue preclusion and granted to trial courts 'broad discretion to determine when it should be applied.'" *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007).

---

[1] In the alternative, RBC asserts that even if the WAP were a pension plan under ERISA, the WAP is a "top hat" plan that is exempt from many of ERISA's substantive protections. The parties stipulated to address the top hat exemption issue in later-filed motions for summary judgment. *See* Dkt. 23. Accordingly, the Court does not address that issue in the present order.

"[O]ffensive nonmutual issue preclusion is appropriate only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Id.* (citations omitted). "Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding." *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997) (citation omitted). Additionally, trial courts have broad discretion to take potential shortcomings or indices of unfairness into account even where the four prerequisite elements for collateral estoppel are established. *Syverson*, 472 F.3d at 1078–79. These include whether:

> (1) the plaintiff had the incentive to adopt a "wait and see" attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first "and that could readily cause a different result.

*Id.* at 1079 (citations omitted).

The parties do not dispute that *Tolbert* was decided in a final judgment or that RBC was a party to that case under the third and fourth prongs of the collateral estoppel analysis. RBC, however, asserts that "collateral estoppel does not apply, because the question presented is neither 'identical' to the issue resolved in *Tolbert* nor 'actually litigated' in that case." Dkt. 24 at 12. Accordingly, the Court focuses its analysis on whether the Fifth Circuit actually litigated the identical issue to the one presently before the Court.

1. <u>RBC had a full and fair opportunity to litigate the identical issue of whether the WAP is an employee pension benefit plan in *Tolbert*.</u>

First, the Court must assess whether RBC had a full and fair opportunity to litigate the identical issue in the prior action. *See Syverson*, 472 F.3d at 1078. At the outset, the Court notes that the Fifth Circuit's description of *Tolbert* could be used word-for-word to describe the dispute in the present case:

> The plaintiffs in this case are former employees of the defendant ("RBC") who participated in a wealth accumulation plan ("WAP") during their periods of employment. Giving rise to this lawsuit, portions of the plaintiffs' WAP accounts were forfeited when the plaintiffs left their jobs at RBC. The plaintiffs allege that the forfeitures amounted to violations of the Employment Retirement Income Security Act ("ERISA").

*Tolbert*, 758 F.3d at 621.

RBC argues that the "mere resemblance" between the present case and *Tolbert* does not suffice to collaterally estop RBC from litigating the pension plan issue here. Dkt. 28 at 4. RBC contends that the 2008 version of the WAP considered by the Fifth Circuit in *Tolbert* is distinct from later iterations of the WAP that were in effect when Paul and Buskirk separated from RBC in 2011 and 2012 respectively. RBC points to "material changes" in the way that it administered the WAP in 2010 and 2011 without making any actual changes to the WAP's language. *Id.* at 10. According to RBC, these unstated changes included new "productivity" and "loyalty" bonuses which qualify the WAP as a "bonus program" exempt from ERISA's coverage. *Id.* at 13.

Paul and Buskirk contend that there is a single WAP, not multiple versions, and that the relatively insignificant changes in the year-to-year administration of the WAP by RBC does not make it distinct from the WAP considered by the Fifth Circuit in *Tolbert*.

Despite RBC's efforts to distinguish different "versions" of the WAP, the cases RBC cites do little to advance the argument that the Fifth Circuit considered a different issue. *See* Dkt.

24 at n.12.[2] Even if RBC modified the year-to-year internal administration of the WAP with respect to how it made company contributions, RBC concedes that the express terms and stated purpose of the WAP from 2008 to 2012 remained virtually unchanged: to provide a "deferred compensation plan" allowing participating employees "to invest a portion of their compensation in tax-deferred savings and investment options in an effort to support long-term savings . . ." *See* Dkt. 28 at 4; Dkt. 25 at 87, 110. The Fifth Circuit relied primarily on these express terms in holding that the WAP was an employee pension benefit plan subject to ERISA. *Tolbert*, 758 F.3d at 625–26. The Court is unpersuaded by RBC's argument that unspecified modifications to the internal administration of the WAP transform the issue in this case into something different than what the Fifth Circuit addressed in *Tolbert*. Simply put, the WAP in subsequent years contained substantively identical express terms to those in the 2008 WAP considered by the Fifth Circuit. The Court determines without hesitation that the issue presented in the cross-motions for summary judgment, whether the WAP is an employee pension benefit plan subject to ERISA, is precisely the same issue decided by the Fifth Circuit in *Tolbert*.

    2. <u>The issue was actually litigated in *Tolbert*.</u>

Next, RBC asserts that collateral estoppel should not apply because its argument that the WAP is a "bonus program" excluded from ERISA's coverage was not "actually litigated" in *Tolbert*. Dkt. 24 at 14. Paul and Buskirk respond that RBC made a strategic decision to forgo this

---

[2] The single case cited by RBC from the Ninth Circuit, *Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002), is inapposite. In *Cent. Delta*, the Ninth Circuit held that collateral estoppel was inapplicable where two cases involved the same subject matter (the Bureau of Reclamation's release of water into the New Melones Unit of the Central Valley Basin), but where the two lawsuits challenged completely different management plans: the 1995 Bay Delta Water Quality Plan as opposed to the 1999 New Melones Interim Operations Plan. *Id*. at 952–53. Here, the Court is confronted with the same subject matter *and* the same wealth accumulation plan.

argument in the *Tolbert* litigation and cannot revive it here to defeat collateral estoppel. Dkt. 26 at 15. Significantly, the bonus program argument did not escape the Fifth Circuit's attention:

> To begin, RBC admits that the WAP is not a "bonus program" under [29 C.F.R.] § 2510.3–2(c)—indeed, RBC never argued otherwise at the district court. For good reason: The WAP's statement of purpose provides that the WAP is a "deferred compensation plan" allowing employees "to defer receipt of a portion of their compensation to be earned with respect to the upcoming Plan Year." This is not a bonus plan.

*Tolbert*, 758 F.3d at 626.

The *Tolbert* opinion makes clear that the Fifth Circuit dismissed outright the notion that the WAP qualified as a bonus program. Additionally, the Fifth Circuit noted that RBC admitted that the WAP was not a bonus program. The doctrine of collateral estoppel would be rendered meaningless if a losing party could avoid its application by simply raising an argument that it strategically chose not to pursue in the prior proceeding. RBC's contention that its bonus program argument should preclude collateral estoppel in the present case is without merit.

3. <u>There are no potential shortcomings or indices of unfairness that preclude the application of collateral estoppel.</u>

Finally, none of the potential shortcomings or indices of unfairness identified by the Ninth Circuit preclude the Court's application of collateral estoppel here. *Syverson* 472 F.3d at 1079. Paul did not pursue a "wait and see" approach, but initially filed suit in 2013 while the *Tolbert* litigation was pending. The Court has no reason to doubt that RBC defended the *Tolbert* litigation with full vigor and with the knowledge from their tolling agreements that Paul and Buskirk had foreseeable claims. The Court is aware of no inconsistent judgments or different procedural opportunities in this forum which would render the application of offensive collateral estoppel unfair to RBC.

1  Accordingly, the Court determines that RBC is collaterally estopped from re-litigating the

2  pension plan issue, and that the Fifth Circuit's determination from *Tolbert* that the WAP is an

3  employee pension benefit plan under ERISA applies to this case.

**B. Even if collateral estoppel did not apply, the Court would determine that the WAP is an employee pension benefit plan under ERISA.**

RBC criticizes "the Fifth Circuit's flawed reasoning," and implores the Court not to "blindly accept the ruling in *Tolbert* . . . but rather critically evaluate its analysis." Dkt. 28 at 3, 14. Even if RBC was not collaterally estopped from re-litigating the pension plan issue, the Court would reach the same conclusion as the Fifth Circuit and determine that the WAP is an employee pension benefit plan under ERISA.

ERISA defines an employee pension benefit plan as:

> any plan, fund, or program . . . maintained by an employer . . . that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i)   Provides retirement income to employees, or
>
> (ii)  Results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> Regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A).

RBC argues that "the WAP's undisputed primary purpose was to attract and retain key employees at RBC, not provide income at retirement or beyond. And it did so by serving as the central vehicle into which RBC paid bonuses and other awards to employees . . . ." Dkt. 24 at 3. But the primary purpose of the WAP is disputed, and convincingly so, by Paul and Buskirk. The biggest flaw in RBC's argument is that the express terms contained in the WAP's "General Nature and Purpose of the Plan" make no mention of employee recruitment, retention, or

payment of bonuses. *See e.g.*, Dkt. 25 at 87. To the contrary, the express terms unequivocally state that the WAP is a "deferred compensation plan . . . . designed to provide an opportunity for such employees to invest a portion of their compensation in tax-deferred savings and investment options in an effort to support long-term savings . . . ." *Id*. RBC fails to persuasively reconcile the tension between this language and its position that the WAP has a different, unstated purpose.

RBC is quick to highlight that participation in the WAP was optional and cites to *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999), for the proposition that the mere option to defer income does not trigger ERISA's coverage. Dkt. 24 at 20. But the Fifth Circuit distinguished the WAP from the phantom stock plan at issue in *Emmenegger*, and observed that the option to defer income under the WAP does not change the fact that the express terms of the WAP result in a deferral of income. *Tolbert*, 758 F.3d at 627.

RBC also attempts to analogize the WAP to the Stock Rights Plan (SRP) that the Ninth Circuit determined was not an employee pension benefit plan in *Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016). Dkt. 28 at 19. But this argument sidesteps the *Rich* Court's differentiation of the SRP from the WAP considered by the Fifth Circuit in *Tolbert*:

> The plan in [*Tolbert*] was referred to by the defendant company as a "deferred compensation plan" and its main purpose was to allow for the deferral of compensation. Here, unlike in *Tolbert*, the SRP was never referred to by [the defendant] as a deferred compensation plan, and its primary purpose, as discussed above, was not the deferral of compensation.

*Rich*, 823 F.3d at 1211. For the reasons articulated by the Ninth Circuit in *Rich*, the comparison to the SRP is inappropriate here.

It is apparent from the record before the Court that the WAP resulted in the deferral of income by Paul, Buskirk, and many other RBC employees participating in the WAP. *See* Dkt. 25

at 73 (from 2007–2011, anywhere from one-third to approximately half of WAP participants elected to take retirement distribution of their voluntary deferrals and company contributions). The Court can draw but one conclusion: by its express terms and surrounding circumstances, the WAP resulted in the deferral of income by RBC employees for periods extending to the termination of covered employment or beyond under 29 U.S.C. § 1002(2)(A)(ii). Accordingly, even if RBC were not collaterally estopped from re-litigating the WAP's status as an employee pension benefit plan, the Court would reach the same conclusion as the Fifth Circuit and determine that WAP is an employee pension benefit plan subject to ERISA.

## IV. CONCLUSION

RBC's Motion for Summary Judgment on Pension Plan Issue [Dkt. #24] is **DENIED**.

Plaintiffs' Motion for Partial Summary Judgment [Dkt. #26] is **GRANTED**.

IT IS SO ORDERED.

Dated this 8th day of February, 2018.

Ronald B. Leighton
United States District Judge